182 Cal.App.4th 194 (2010)
THE PEOPLE, Plaintiff and Respondent,
v.
SAMUEL BENITEZ, Defendant and Appellant.
No. G041201.
Court of Appeals of California, Fourth District, Division Three.
February 24, 2010.
*196 Lewis A. Wenzell, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez, Andrew Mestman and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
RYLAARSDAM, J.
A jury found defendant Samuel Benitez guilty of resisting an officer (Pen. Code, § 69), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and misdemeanor resisting an officer (Pen. Code, § 148). The court sentenced him to three years' probation plus 180 days in custody to be served on weekends.
*197 After defendant objected on the ground of hearsay, the acting supervisor of the county's crime laboratory testified, based on notes made by an analyst, that a substance in defendant's possession was methamphetamine. A report produced by the analyst to the same effect was introduced into evidence. The analyst who conducted the tests did not testify. The supervisor described the laboratory's procedures and attested to the analyst's expertise.
Defendant's appeal raises a single issue: was he denied his constitutional right to confrontation when the supervisor was permitted to testify, using another's analysis of the substance. We previously issued an opinion affirming defendant's conviction based upon the decision of the California Supreme Court in People v. Geier (2007) 41 Cal.4th 555 [61 Cal.Rptr.3d 580, 161 P.3d 104] (Geier). Geier held that reports of DNA test results were not testimonial and therefore the admission of such evidence was not prohibited by Crawford v. Washington (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (Crawford). (Geier, supra, 41 Cal.4th at p. 605.)
Defendant filed a petition for review and while that petition was pending, the United States Supreme Court decided Melendez-Diaz v. Massachusetts (2009) 557 U.S. ___ [174 L.Ed.2d 314, 129 S.Ct. 2527] (Melendez-Diaz). In Melendez-Diaz the court held that technicians' certificates analyzing suspected illegal substances constituted testimonial statements "rendering the affiants `witnesses' subject to the defendant's right of confrontation under the Sixth Amendment." (Id. at p. ___ [129 S.Ct. at p. 2530].)
The California Supreme Court granted defendant's petition for review and transferred the cause back to our division with directions to vacate our judgment and reconsider the matter in light of Melendez-Diaz. After the parties submitted supplemental briefs we reconsidered the matter as directed. We now reverse defendant's conviction of possession of methamphetamine. The remainder of the judgment is affirmed.

FACTS
Vaughn, the managing supervisor of the analyst who conducted the analysis and created the report, testified based on the analyst's notes that the substance in defendant's possession was 0.02 grams of methamphetamine. These notes were not introduced into evidence. Vaughn produced a single-page form entitled "Request for Analysis" (RFA), which was introduced. The RFA contains chain of custody information and identifies material apparently submitted with the form as "Susp. Methamphetamine." The "analysis" portion of the RFA states, "The white crystalline substance (net weight 0.02 *198 gram) contains methamphetamine." The RFA was signed by John Jermain, identified as "analyst," under the statement "I hereby certify the foregoing laboratory analysis to be true under penalty of perjury" and contained an entry of the date and place of execution. The place to enter the "date and time logged" by the laboratory was left blank.
Vaughn explained the analyst's notes in terms of their determinative significance and affirmed the results were "all consistent with that substance being methamphetamine" and "appear[ed] to be valid and unexceptional." Vaughn testified that he knew the analyst complied with required procedures, and that although he "was not there physically to observe" the analyst create his notes, "procedures require us to write [our observations] at or near the time [of analysis]." Throughout Vaughn's testimony the defense maintained a "standing hearsay objection."
On cross-examination, the defense inquired about the weight of the substance as well as if Vaughn knew "the specific gravity for methamphetamine," which he did not. The defense then asked whether Vaughn knew if the specific gravity of methamphetamine "is like any other substance that's commonly known like salt . . . ." Vaughn answered that he had "never seen any reports of that."

DISCUSSION

1. Sixth Amendment Background

(1) A criminal defendant's Sixth Amendment right "[i]n all criminal prosecutions . . . to be confronted with the witnesses against him" (U.S. Const., 6th Amend.) has been implemented by the corresponding rule that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." (Crawford, supra, 541 U.S. at p. 59, fn. omitted.)
The first step in a confrontation clause analysis, therefore, is to determine whether a statement is "testimonial." The California Supreme Court's assessment of DNA reports demonstrates the potential difficulty of this step, since, "[w]hile we have found no single analysis of the applicability of Crawford and Davis [v. Washington (2006) 547 U.S. 813 [165 L.Ed.2d 224, 126 S.Ct. 2266]] to the kind of scientific evidence at issue in this case to be entirely persuasive, we are nonetheless more persuaded by those cases concluding *199 that such evidence is not testimonial, based on our own interpretation of Crawford and Davis." (Geier, supra, 41 Cal.4th at p. 605.)
(2) Geier ruled a report of contemporaneous scientific observation recording "raw data" is admissible evidence under Crawford because such a report is nontestimonial. (Geier, supra, 41 Cal.4th at p. 607.) In Geier, a laboratory supervisor was permitted to testify regarding a DNA report that he himself did not create. The supervisor proffered a scientific opinion based on the test results and noted the report was composed of contemporaneously recorded observations. (Id. at pp. 593-595.) In holding the testimony did not offend the defendant's right to confrontation, the court focused on Davis, which held the recorded transcript from a 911 emergency phone call to be nontestimonial. (Id. at pp. 603-606.)
In Davis, the court gave two main reasons for its conclusion that the confrontation clause did not require the in-court testimony of the declarant. First, the court emphasized that the 911 caller was describing events as they occurred, making it a completely contemporaneous observation. (Davis v. Washington, supra, 547 U.S. at pp. 827, 829.) Second, the declarant caller did not reasonably know her statements would be used at trial; the statements were not made in anticipation of litigation and therefore were neither accusatory nor testimonial. (Id. at p. 827.)
After Crawford, Davis, and Geier, Melendez-Diaz revisited the confrontation clause within the context of scientific laboratory reports. The drug analysis reports at issue were sworn statements of a chemical analysis performed by a state laboratory upon police request. (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2529].)
Melendez-Diaz did not overrule Davis, the central focus of the Geier court's analysis, rather the majority in Melendez-Diaz asserted that its decision was "little more than the application of [its] holding in Crawford . . . ." (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2542].) The failure to deal with Davis may be because of a significant difference between the transcript of a 911 telephone call and a scientific report such as the one involved here. Although both may involve contemporaneous observations, contrary to the 911 caller, the preparer of the scientific report here did know the statement was to be used at trial. In fact, the report furnished an essential element in the prosecution's case.

2. Scientific Reports As "Testimonial" Evidence

a. Facially Neutral Evidence Qualifying Under a Hearsay Exception

The analyst's RFA and laboratory notes are accusatory and subject to the requirements of the confrontation clause, despite their potential qualification *200 as business records. Melendez-Diaz undermined a foundation of Geier's rationale when it plainly rejected an argument that testimony based on "`neutral scientific testing'" is nontestimonial, stating it was based on a rule from Ohio v. Roberts (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531], overruled in Crawford, supra, 541 U.S. 36. (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2536].) Geier reasoned that results of scientific tests are not accusatory because they are conducted "as part of [a] job, not in order to incriminate [the] defendant." (Geier, supra, 41 Cal.4th at p. 607.) Melendez-Diaz explicitly rejected the argument that scientific data are not produced against the defendant because the laboratory certificates "certainly provided testimony against [the defendant], proving one fact necessary for his convictionthat the substance he possessed was cocaine." (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2533], italics omitted.) These reports are testimonial because they are used "against" the defendant, to establish an element of the crime. (Id. at p. ___ [129 S.Ct. at p. 2534].)
In contrast to the declarant in Davis and analogous to Melendez-Diaz, the analyst here prepared the report knowing of its contemplated use in litigation. Criminal prosecution was the sole purpose for the production of the report, and, by extension, the production of the laboratory notes. The sheriff's department prepared the form addressed to the "scientific investigations division forensic science laboratory" (boldface & capitalization omitted) requesting a "report on the examination of controlled substances." The analyst's laboratory notes and the RFA were accusatory and testimonial to the extent that they were prepared to be used by the prosecution to establish defendant's possession of a controlled substance.
(3) Contrary to the Attorney General's argument, the mere existence of a firmly rooted hearsay exception does not, in and of itself, create an exception to confrontation clause requirements. Under Melendez-Diaz, documents prepared for evidentiary purposes at trial may be inadmissible under the confrontation clause despite their qualification under a hearsay exception. (Melendez-Diaz, supra, 557 U.S. at pp. ___ _ ___ [129 S.Ct. at pp. 2538-2540].) Of particular note, statements in official records or business records prepared by entities whose "regularly conducted business activity is the production of evidence for use at trial" may only be admitted subject to the strictures of the confrontation clause. (Id. at p. ___ [129 S.Ct. at p. 2538].) In other words, courts may not substitute a test for reliability or trustworthinesssuch as a firmly rooted hearsay exception for business records-for the right to confrontation. (Id. at p. ___ [129 S.Ct. at p. 2536].)
(4) In this case, the fact that the analyst's laboratory notes were made in the regular course of business, pursuant to standardized scientific procedure, does not eliminate their testimonial nature. The trial court erred, therefore, in *201 admission of the RFA as a business record without affording appellant an opportunity to cross-examine its creator.

b. Contemporaneous Scientific Observation and Melendez-Diaz
(5) The Attorney General contends this case is distinguishable from Melendez-Diaz because it involves full, rather than nearly, contemporaneous observation. Geier held scientific recordation made at the time the analysis was conducted was nontestimonial because "the crucial point is whether the statement represents the contemporaneous recordation of observable events." (Geier, supra, 41 Cal.4th at p. 607.) But Melendez-Diaz explains that affording substantial weight to the contemporaneous nature of a statement "misunderstands the role that `near-contemporaneity' has played in our case law." (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2535].) Melendez-Diaz further notes that the affiants' testimonial statements were not nearly contemporaneous with their observations, nor, if they had been, would that fact alter the statements' testimonial character. (Ibid.) Thus, the contemporaneous nature of a laboratory report does not eliminate its testimonial nature.

3. The Cross-examination Requirement

(6) The opportunity to cross-examine Vaughn, whose testimony was based on the analyst's notes, fails to satisfy defendant's Sixth Amendment right to confrontation. Under Melendez-Diaz, there is no substitute for cross-examination of the creator of a scientific report. Here, defendant had no effective means to challenge whether the analyst correctly performed the tests reflected in his written report. The opportunity for cross-examination is essential to the protection guaranteed by the confrontation clause, because "`the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.'" (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2536], quoting Crawford, supra, 541 U.S. at pp. 61-62.)
(7) Melendez-Diaz rejected the contention that evidence of scientific testing is inherently reliable, noting that "[f]orensic evidence is not uniquely immune from the risk of manipulation." (Melendez-Diaz, supra, 557 U.S. at p. ___ [129 S.Ct. at p. 2536].) The court noted that many forensic laboratories are, in effect, subsidiaries of the law enforcement agencies they serve, creating this risk of manipulation. (Ibid.)
*202 Reliance on Geier as authority for permitting a substitute witness to testify to otherwise inadmissible scientific reports would be misplaced. First, Geier held the DNA reports were admissible because they were nontestimonial in nature, not because a supervisor's testimony satisfied the confrontation clause. (Geier, supra, 41 Cal.4th at p. 607.) Geier does not suggest that the defendant's confrontation right would have been satisfied had the underlying report been testimonial, as the RFA and underlying laboratory notes are in this case. (Ibid.) Further, in Geier, the defendant was able to cross-examine the person who issued the test results who had cosigned the DNA report. (Id. at p. 596.) We express no opinion whether testimony under those circumstances would satisfy the confrontation clause requirements if the supervisor physically participated in or observed the testing process. But, in any event, Vaughn did not sign either the laboratory notes nor the RFA and did not participate in or observe the testing process. Hence, there was no opportunity to cross-examine him with respect to the procedures used.

4. No Harmless Error

Confrontation clause violations are subject to harmless error analysis under Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]. This standard provides that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. [Citations.]" (Delaware v. Van Arsdall (1986) 475 U.S. 673, 681 [89 L.Ed.2d 674, 106 S.Ct. 1431].) Factors to consider include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. [Citations.]" (Id. at p. 684.)
Here, the admission of the RFA and Vaughn's testimony were crucial to establishing the substance was methamphetamine. It cannot be said that, beyond a reasonable doubt, the conviction would have ensued irrespective of the error in admitting the evidence. No similarly determinative evidence was introduced to establish that the substance found on defendant's person was methamphetamine. It is obvious the jury gave substantial weight to the scientific testing performed. Thus, admission of the RFA and Vaughn's testimony based on the analyst's laboratory notes was not harmless error. Accordingly, the conviction for possession of methamphetamine must be reversed.

*203 DISPOSITION
The portion of the judgment finding defendant guilty of possession of methamphetamine is reversed. The judgment is affirmed in all other respects.
Sills, P. J., and O'Leary, J., concurred.