[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
* Pursuant to California Rules of Court, rules 8.1105 and 8.1115, this opinion is certified for publication with the exception of part B.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1618 
OPINION
In this appeal, we will address the following question: Does the United States Supreme Court's determination in the recent case of Melendez-Diazv. Massachusetts (2009) 557 U.S. [174 L.Ed.2d 314, 129 S.Ct. 2527] (Melendez-Diaz), alter the California rule established in People v.Geier (2007) 41 Cal.4th 555, 596-607 [61 Cal.Rptr.3d 580, 161 P.3d 104] (Geier), that an in-court witness may rely on laboratory notes and reports, even if prepared by a different individual, to support the witness's expert opinion? Melendez-Diaz held that the admission of a written document to establish laboratory results violates the Sixth Amendment. (Melendez-Diaz, supra, 557 U.S. at p. [129 S.Ct. at p. 2532].) We will hold that Melendez-Diaz does not abrogate the holding in Geier.
 FACTS AND PROCEDURAL HISTORY
The present defendant, Kevin Alan Bowman, appeals from a final judgment following a jury trial. He was convicted of certain drug offenses. On appeal, he contends the evidence establishing the nature of the controlled substance was admitted into evidence in violation of his Sixth Amendment right to confront witnesses. He also contends, and respondent concedes, the court impermissibly imposed certain fines as part of the sentence. In the published portion of this opinion, we will reject defendant's Sixth Amendment claim. We will modify the judgment to omit the fines in question and affirm the judgment as modified. *Page 1619 
As relevant to this appeal, police officers stopped defendant on June 6, 2008, for traffic infractions. Searching defendant's car, the officers found marijuana, a digital scale, a police scanner, and a crystalline substance that appeared to be methamphetamine. A jury found defendant guilty of transportation of methamphetamine (Health Saf. Code, §11379, subd. (a)) and possession of drug paraphernalia (Health Saf. Code, § 11364, a misdemeanor). Defendant pleaded guilty to using a false license plate (Veh. Code, § 4462.5, a misdemeanor) and operating a vehicle with no license plate (Veh. Code, § 5200, an infraction). Other counts and enhancement allegations not relevant to this appeal were dismissed or found not true. Defendant was sentenced to the upper term of four years in prison on the felony count, with concurrent terms on the misdemeanors. The court imposed various fines, including, as relevant here, four criminal conviction assessments totaling $125, pursuant to Government Code section 70373.
 DISCUSSION
A. The Sixth Amendment Claim
Defendant's primary contention on appeal is that he was denied his Sixth Amendment right to confront witnesses against him at trial. The facts relevant to this contention are as follows:
On the first day of trial, the prosecutor informed the court that the criminalist who performed chemical testing on the suspected methamphetamine was out of the state for an extended period for training. The prosecutor said she was "requesting that Jeanne Spencer or an alternate substitute criminalist be used regarding the analysis." When defense counsel was asked by the court whether he objected to the substitution, counsel responded: "As long as the person will have first-hand knowledge of the testing procedure." The court responded: "I understand the rules of evidence. Whoever testifies is going to have to be able to — their testimony will be governed by the Evidence Code." After further discussion about the nature of the testimony, the court informed defense counsel that the court did not understand the objection. Counsel responded: "Nothing else. I have no complaint about it, sir."
When the prosecutor called Spencer as a witness during the trial, she testified without objection that she was a supervisor at the Kern County regional crime laboratory. She described her experience and training. She stated that she had supervised the training and the current work of Chris Snow, the criminalist who performed the testing in the present case. Spencer described the protocols and procedures for testing suspected controlled substances and for reporting the results of that testing. *Page 1620 
Spencer testified that she regularly reviewed the contemporaneous notes required to be taken by her criminalists as they performed various steps of the testing, and that she had reviewed the notes in this case as part of her regular supervision of Snow's work, that is, before she knew she would be testifying in the case. The notes contained no indication that anything unusual occurred in the testing. She identified Snow's report concerning his test results and stated that the report appeared to be in standard format. She stated the reports are made near the time the results of the testing become known and that the reports are reliable and trustworthy.
The prosecutor asked Spencer: "And what were the results of the analysis of the evidence submitted?" Defense counsel objected on the basis the answer called for hearsay and that there was not sufficient foundation to permit the testimony. The court overruled the objections. Spencer then testified the "material that was examined contained methamphetamine." Counsel interposed similar objections when Spencer was asked about the weight and usable quantity of the substance. The objections were overruled.
On cross-examination, Spencer acknowledged that she did not personally perform any of the weighing or testing of the suspect substance. She testified, however, that in her review of Snow's notes and his formal report, she "would make sure that the results he put down for his tests basically support the conclusion he drew from those results." Defense counsel then questioned Spencer about several steps in the analysis. He closed the examination by having Spencer reiterate that she had not personally conducted the testing. After brief redirect, Spencer was excused as a witness. A defense request that Spencer be subject to recall was granted. At the close of the prosecutor's case, she moved the laboratory report into evidence. Defense counsel renewed his hearsay and lack-of-foundation objections. The court stated those objections would not be sustained but that the court had a practice of not allowing the report into evidence since it contained other irrelevant and confusing information and the requisite evidence had been placed before the jury by Spencer's testimony. The prosecutor agreed.
The next day, before the defense case, counsel moved to strike Spencer's testimony based on the constitutional right to confront witnesses. He said the Sixth Amendment guaranteed defendant the right to cross-examine the analyst who had performed the testing. The court stated: "I allowed that evidence in because there had been proper foundation given as to business records. And *Page 1621 
you did have the opportunity to cross-examine the person who reviewed that particular document and you did. So — but I will note that objection for the record and overrule it."[1]
In Crawford v. Washington (2004) 541 U.S. 36 [158 L.Ed.2d 177,124 S.Ct. 1354] (Crawford), "the United States Supreme Court held that the introduction of `testimonial' hearsay statements against a criminal defendant violates the Sixth Amendment right to confront and cross-examine witnesses, unless the witness is unavailable at trial and the defendant has had a prior opportunity for cross-examination." (Peoplev. Vargas (2009) 178 Cal.App.4th 647, 653 [100 Cal.Rptr.3d 578].) "Under Crawford, the crucial determination about whether the admission of an out-of-court statement violates the confrontation clause is whether the out-of-court statement is testimonial or nontestimonial." (Geier,supra, 41 Cal.4th at p. 597.) As examples of nontestimonial hearsay, governed by the rules of evidence but not excluded under the Sixth Amendment, Crawford lists "business records or statements in furtherance of a conspiracy." (Crawford, supra, at p. 56.)
In Geier, the issue was whether a laboratory director could testify in a criminal trial based on her analysis of DNA test results obtained by another analyst in her laboratory: "Dr. Cotton testified that the analysis of the samples was performed by Paula Yates, one of Cellmark's biologists. Dr. Cotton reviewed the forms Yates filled out at various points in the [testing] protocol and [Yates's] handwritten notes, as well as all the other data in the case. . . . [Cotton] and Yates cosigned the DNA report in this case, as well as two follow-up letters to the San Bernardino Sheriffs Department." (Geier, supra, 41 Cal.4th at p. 596.) Cotton testified that, "based on her review of Yates's notes," the crime-scene DNA sample matched DNA samples from the defendant. (Ibid.)
In Geier, the Supreme Court held that Cotton's testimony satisfied Sixth Amendment requirements even though the testimony was based on test results obtained and reported by Yates: "Yates conducted her analysis, and made her notes and report, as part of her job, not in order to incriminate defendant. Moreover, to the extent Yates's notes, forms and report merely recount the procedures she used to analyze the DNA samples, they are not themselves accusatory, as DNA analysis can lead to either incriminatory or *Page 1622 
exculpatory results. Finally, the accusatory opinions in this case — that defendant's DNA matched that taken from the victim's vagina and that such "a result was very unlikely unless defendant was the donor — were reached and conveyed not through the nontestifying technician's laboratory notes and report, but by the testifying witness, Dr. Cotton." (Geier, supra,41 Cal.4th at p. 607.)
Obviously, the testimony in the present case would be admissible underGeier. Defendant does not contend otherwise. While Spencer's initial testimony was somewhat ambiguous — she may have meant the report
concluded the substance was methamphetamine or that she herself concluded it was methamphetamine based on the reported test results — she clarified her testimony on cross-examination, stating that she had evaluated the notes and test results and determined that they supported the conclusion that the substance was methamphetamine.
Defendant, however, contends that Geier, supra, 41 Cal.4th 555 was impliedly overruled by the more recent case of Melendez-Diaz, supra, 557 U.S. [129 S.Ct. 2527]. We conclude, to the contrary, that the holding inMelendez-Diaz addressed a different issue and the case does not supersede our obligation to follow Geier.
"A decision of the highest reviewing court in a state is considered absolutely binding on a trial court or lower appellate court." (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 492, p. 551.) "Although Courts of Appeal are bound by decisions of the United States Supreme Court on federal questions . . ., these courts are bound by the California Supreme Court's interpretation of federal questions in the absence of contrary decisions of the United States Supreme Court. . . ." (Id. at p. 552.) Our task on this appeal, therefore, is not to attempt to predict what the United States Supreme Court will decide when it is confronted with the question now before us, but is, instead, to determine whether that court has rendered a decision that necessarily conflicts with the decision of the California Supreme Court. The discussion that follows takes note of the unusual structure of the majority and concurring opinions in Melendez-Diaz.
The issue in Melendez-Diaz was described at the outset: "The Massachusetts courts in this case admitted into evidence affidavits reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine. The question presented is whether *Page 1623 
those affidavits are `testimonial,' rendering the affiants `witnesses' subject to the defendant's right of confrontation under the Sixth Amendment." (Melendez-Diaz, supra, 557 U.S. at p. [129 S.Ct. at p. 2530].) In its "rather straightforward application of our holding in Crawford" (id. at p. [129 S.Ct. at p. 2533]), the court noted two features of the Massachusetts documents. First, the documents were relied upon by the prosecution to prove the substance in question was cocaine: "The `certificates' are functionally identical to live, in-court testimony, doing `precisely what a witness does on direct examination.'" (Id. at p. [129 S.Ct. at p. 2532].) Second, the documents were made with the intention that they would be used as prima facie evidence of the composition and amount of the substance. (Ibid.) "In short, under our decision in Crawford the analysts' affidavits were testimonial statements, and the analysts were `witnesses' for purposes of the Sixth Amendment." (Ibid.)
At this point, the opinion turns to "a potpourri of analytic arguments" put forth by the dissenting opinion and the State of Massachusetts to avoid the majority's conclusion. Each of these arguments, as well as the majority's response, is premised on the characterization of the affidavits as "testimonial." That is, the discussion is premised on the affidavit itself as the "testimony" of the analyst who produced it. The affidavit is tendered by the prosecution as direct and otherwise admissible evidence of the fact in question. (See Melendez-Diaz, supra,557 U.S. at pp. ___, ___, ___, ___ [129 S.Ct. at pp. 2534, 2536, 2538,2540].) The majority opinion addresses and rejects the various reasons put forth for permitting the affidavits to function as admissible "testimony" in this manner.
Among the reasons set forth are some of the rationales expressed by the California Supreme Court in Geier, supra, 41 Cal.4th 555, to support its conclusion that laboratory notes and reports could serve as the basis for in-court testimony by an expert relying on those materials. In particular, Melendez-Diaz rejects the proposition that the affidavits before it were admissible because they constituted nearly contemporaneous reports of the witness's observations. (Melendez-Diaz, supra,557 U.S. at p. ___ [129 S.Ct. at p. 2535]; see People v. Vargas, supra,178 Cal.App.4th at pp. 659-660.) Geier relies upon a similar distinction in reaching its conclusion: it stated that the laboratory notes and reports "merely recount the procedures [the analyst] used to analyze the DNA samples, they are not themselves accusatory." (Geier,supra, 41 Cal.4th at p. 607.)
The important point, for purposes of this appeal, however, is not whether the California Supreme Court employed reasons in reaching its conclusion that are similar to the reasons employed by the dissenting justices in the United States Supreme Court and rejected by the majority. The important *Page 1624 
point is that those reasons were employed to support entirely different conclusions: In Geier, an in-court witness, subject to cross-examination, was allowed to rely on laboratory notes and reports to support an expert opinion that she was qualified by training and experience to give. In Melendez-Diaz, similar reasoning was held not to support the admissibility of a written document that was, of course, not subject to cross-examination and whose author was not subject to cross-examination concerning either expert qualifications or analytical conclusions.[2]
The importance of this distinction is highlighted by the concurring opinion of Justice Thomas in Melendez-Diaz. Justice Thomas was the decisive vote in the five-four resolution of the case. While he concurred in the opinion of the court, and not merely the judgment, he reiterated his position that "`the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" (Melendez-Diaz, supra, 557 U.S. at p. [129 S.Ct. at p. 2543] (conc. opn. of Thomas, J.).) He joined the court's opinion "because the documents at issue in this case" were exactly the type of formalized affidavits at the core of the confrontation clause. (Ibid.)
It may be that the United States Supreme Court eventually will extend the Crawford doctrine to include all documents traditionally relied upon by expert witnesses in support of their in-court testimony, or to the particular forms of documentation relied on by the expert in the present case and in Geier. There are sound reasons to believe the court will not do so, but the point is that it has not done so to date.
Resolution of the present appeal does not require us to speculate on that issue. Instead, we are bound by the holding in Geier and are neither required nor permitted to extrapolate from dicta in the majority opinion in Melendez-Diaz in order to disregard Geier. We hold that defendant was not deprived of his Sixth Amendment right to confront and cross-examine the witnesses against him in the present case.
B. The Fines*
At sentencing, the court imposed fines of $30 for each of defendant's felony and misdemeanor convictions and $35 on the infraction, all pursuant to Government Code section 70373. That section, which became effective January 1, 2009, provides for such "assessments" "on every conviction" in order to provide funding for court facilities projects. (Gov. Code, §§ 70373, subd. (a)(1); see generally Sen. Rules Com., Off. of Sen. Floor Analyses, Bill Analysis of Sen. Bill No. 1407 (2008-2009 Reg. Sess.) Aug. 30, 2008 (available at http://www.leginfo.ca.gov/pub/07-08/bill/sen/sb_1401-1450 /sb_1407_cfa_20080830_152434_sen_floor.html, as accessed on Mar. 4, 2010.)
Defendant's crimes were committed prior to the effective date of Government Code section 70373. Generally, in the absence of clear legislative intent to the contrary, statutory enactments apply only prospectively. (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188,1193-1194.) In the case of criminal penalties, the applicable date is the date of commission of the offense, not the date of conviction. (SeePeople v. Grant (1999) 20 Cal.4th 150, 157.)
There is no indication in the history of Government Code section 70373
that the Legislature intended the applicable assessments to be imposed for crimes committed prior to the effective date of the law. Respondent asserts the same position and agrees that the assessment was improperly imposed in the present case. *Page 1625 
 DISPOSITION
The judgment is modified to strike the imposition of assessments pursuant to Government Code section 70373, subdivision (a)(1), in the amount of $125. As modified, the judgment is affirmed.
Levy, J., and Gomes, J., concurred.
[1] Respondent contends defendant waived any Sixth Amendment claim by stipulating to the substitution of Spencer as a witness and by failing to object on the appropriate basis at the time of her testimony. Because the record is somewhat ambiguous and the court ruled on the merits of the motion to strike — and to forestall further proceedings claiming constitutional ineffectiveness of trial counsel — we consider the Sixth Amendment issue on the merits.
[2] In recognizing a significant distinction between hearsay used by an expert to form an opinion, on the one hand, and the hearsay document itself, on the other, we respectfully disagree with the recent case ofPeople v. Benitez (2010) 182 Cal.App.4th 194, which equated the written lab report and the in-court testimony of the expert witness.
* See, footnote ante, page 1616. *Page 1626