UNITED STATES, Appellee

v.

Joshua C. BLAZIER, Senior Airman
U.S. Air Force, Appellant

No. 09-0441

Crim. App. No. 36988

United States Court of Appeals for the Armed Forces

Argued September 27, 2010

Decided December 1, 2010

RYAN, J., delivered the opinion of the Court, in which
EFFRON, C.J., and BAKER, ERDMANN, AND STUCKY, JJ., joined.

Counsel

For Appellant:  Major Marla J. Gillman (argued); Colonel
James B. Roan and Major Shannon A. Bennett (on brief);
Colonel Eric Eklund, Lieutenant Colonel Maria A. Fried, and
Major Lance J. Wood.

For Appellee:  Gerald R. Bruce, Esq. (argued); Colonel
Douglas P. Cordova and Lieutenant Colonel Jeremy S. Weber
(on brief); Colonel Don M. Christensen and Captain Coretta
E. Gray.

Amicus Curiae for Appellant:  Lieutenant Colonel Jonathan
F. Potter, Lieutenant Colonel Matthew M. Miller, Captain E.
Patrick Gilman, and Captain William Jeremy Stephens (on
brief) -- for the United States Army, Defense Appellate
Division; Major Kirk Sripinyo (on brief) -- for the United
States Navy-Marine Corps, Defense Appellate Division;
Michelle M. Lindo McCluer, Esq., Jonathan E. Tracy, Esq.,
and Stephen A. Saltzburg, Esq. (on brief) -- for the
National Institute of Military Justice; Donald G. Rehkopf
Jr., Esq. (on brief) -- for the National Association of
Criminal Defense Lawyers.

Amicus Curiae for Appellee:  Colonel Norman F. J. Allen
III, Lieutenant Colonel Martha L. Foss, and Major Lisa L.
Gumbs (on brief) -- for the United States Army, Government

United States v. Blazier, No. 09-0441/AF

Appellate Division; <u>Lieutenant Commander Sergio Sarkany</u>, JAGC, USN (on brief) -- for the United States Navy-Marine Corps, Government Appellate Division; <u>Captain S. P. McCleary</u> (on brief) -- for the United States Coast Guard, Government Appellate Division.

Military Judge:  Joseph S. Kiefer

**<u>THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION</u>**

Judge RYAN delivered the opinion of the Court.

In United States v. Blazier (Blazier I), 68 M.J. 439 (C.A.A.F. 2010), we considered the admissibility of two multi-page drug testing reports from the Air Force Institute for Operational Health, Drug Testing Division ("the Brooks Lab") in light of Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). Each report included (1) a cover memorandum summarizing the tests the urine samples were subjected to and the results of those tests, and (2) attached records, the vast majority of which were printouts of the machine-generated data from the drug tests and machine calibrations, along with a specimen custody document, intralaboratory chain of custody documents for each of the laboratory tests conducted, presumptive positive reports, and occasional handwritten annotations.

The cover memoranda, prepared in response to a Government request for use at court-martial, list the results and the corresponding Department of Defense cutoff levels for illegal substances, followed by the certification and signature of a "Results Reporting Assistant, Drug Testing Division": Marina Jaramillo for the June test and Andrea P. Lee for the July test. The bottom portion of each memorandum is a signed and sworn

declaration by Dr. Vincent Papa, the "Laboratory Certifying Official," confirming the authenticity of the attached records and stating that they were "made and kept in the course of the regular conducted activity" at the Brooks Lab.

The drug testing reports, including the cover memoranda, were admitted into evidence over defense objection made in a motion in limine on Confrontation Clause and hearsay grounds. Dr. Papa testified at trial about procedures at the Brooks Lab and the different urinalysis tests conducted at the lab. He also testified about the drug testing reports, explaining the significance of nearly every page and often repeating the substance contained on them. Dr. Papa stated that based upon his review of the reports, as well as his knowledge, training, and experience, the drug tests were reliable and that Appellant had tested positive for methamphetamine and marijuana. The defense objected to this testimony in its motion in limine on the ground that its substance was inadmissible hearsay in violation of the Confrontation Clause and Military Rule of Evidence (M.R.E.) 801.

4

United States v. Blazier, No. 09-0441/AF

We held in Blazier I that "at least the top portion of the drug testing report memoranda . . . were testimonial."[1] 68 M.J. at 443. As we explained:

> Similar to the sworn certificates of analysis in Melendez-Diaz, the top portion of the drug testing report cover memoranda in this case identify the presence of an illegal drug and indicate the quantity present. And the evidentiary purpose of those memoranda was apparent, as they not only summarize and digest voluminous data but were generated in direct response to a request from the command indicating they were needed for use at court-martial. This is true regardless of the impetus behind the testing, the knowledge of those conducting laboratory tests at different points in time, or whether the individual underlying documents are themselves testimonial.

> In another respect, however, the cases are distinct. In Melendez-Diaz, the certificates were introduced as evidence without more: no one was subject to cross-examination about the testing, procedures, or quality control, for example, with respect to the results upon which the certificates were based. See id. at 2531. Here, while Dr. Papa did not personally perform or observe the testing (other than reviewing the bottle label for the first sample) or author the cover memoranda, he was the certifying official for the drug testing reports and was recognized

---

[1] The Government did not appeal this holding, which is the law of the case. See United States v. Erickson, 65 M.J. 221, 224 n.1 (C.A.A.F. 2007) (holding that when a ruling is not appealed, it "will normally be regarded as the law of the case and binding upon the parties"). In any event, we are satisfied that the signed, certified cover memoranda -- prepared at the request of the Government for use at trial, and which summarized the entirety of the laboratory analyses in the manner that most directly "bore witness" against Appellant -- are testimonial under current Supreme Court precedent. See Melendez-Diaz, 129 S. Ct. at 2532; Crawford v. Washington, 541 U.S. 36, 51-53 (2004).

> as an expert in "the field of pharmacology area of drug testing and forensic toxicology," without defense objection.

Id. (footnote omitted).

Dr. Papa was qualified as an expert in "'the field of pharmacology area of drug testing and forensic toxicology,'" under M.R.E. 703 without defense objection and testified in that capacity. Id. Neither Jaramillo nor Lee testified; no showing was made that either individual was unavailable or had been previously subject to cross-examination. Id. at 440 n.2.

We thus invited briefing from the parties on the following issues:

> While the record establishes that the drug testing reports, as introduced into evidence by the prosecution, contained testimonial evidence (the cover memoranda of August 16), and the defense did not have the opportunity at trial to cross-examine the declarants of such testimonial evidence,
>
> > (a) was the Confrontation Clause nevertheless satisfied by testimony from Dr. Papa? See, e.g., Pendergrass v. Indiana, 913 N.E.2d 703, 707-08 (Ind. 2009). But see, e.g., State v. Locklear, 363 N.C. 438, 681 S.E.2d 293, 304-05 (N.C. 2009); or
> >
> > (b) if Dr. Papa's testimony did not itself satisfy the Confrontation Clause, was the introduction of testimonial evidence nevertheless harmless beyond a reasonable doubt under the circumstances of this case if he was qualified as, and testified as, an expert under M.R.E. 703 (noting that "[i]f of a type reasonably relied upon by experts

6

in the particular field in forming opinions or inferences upon the subject, the facts or data [upon which the expert relied] need not be admissible in evidence in order for the opinion or inference to be admitted")? Compare, e.g., United States v. Turner, 591 F.3d 928, 933-34 (7th Cir. 2010), and United States v. Moon, 512 F.3d 359, 362 (7th Cir. 2008), with United States v. Mejia, 545 F.3d 179, 197-98 (2d Cir. 2008).

Id. at 444. We consider these issues below.

## I.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. Accordingly, no testimonial hearsay may be admitted against a criminal defendant unless (1) the witness is unavailable, and (2) the witness was subject to prior cross-examination. Crawford, 541 U.S. at 53-54. The outcome of this case depends on answers to three questions. The first question is whether the Confrontation Clause is satisfied with respect to the testimonial hearsay of Jaramillo and Lee contained in the cover memoranda in light of the fact that Dr. Papa -- who was at least as knowledgeable as the declarants about both procedures at the Brooks Lab generally and, in the Government's view, the substance of their testimony (i.e., the "substitute

7

witness"[2] or "surrogate witness"[3] theory) -- was subject to

cross-examination at trial.  If the Confrontation Clause

was not satisfied, the second question is what Dr. Papa

could and did rely upon and convey in testifying that it

was his expert opinion that Appellant's samples "were

subjected to valid, reliable, scientific and forensic

tests" and that methamphetamine and marijuana "were

accurately detected."  Finally, and relatedly, if evidence

was introduced at trial in violation of the Sixth Amendment

right to confrontation, the remaining question is whether

such constitutional violation was nullified because Dr.

Papa was qualified as and testified as an expert under

M.R.E. 702 and M.R.E. 703.

We hold that where testimonial hearsay is admitted,

the Confrontation Clause is satisfied only if the declarant

of that hearsay is either (1) subject to cross-examination

at trial, or (2) unavailable and subject to previous cross-

examination.  We further hold that an expert may,

consistent with the Confrontation Clause and the rules of

---

[2] See People v. Benitez, 106 Cal. Rptr. 3d 39, 45 (Cal. Ct. App. 2010) (describing a laboratory supervisor testifying in place of the analyst as a "substitute witness"), review granted and opinion superseded by 230 P.3d 1117 (Cal. 2010).

[3] See Jennifer L. Mnookin, Expert Evidence and the Confrontation Clause After Crawford v. Washington, 15 J.L. Pol'y 791, 834 (2007) (describing a reliable witness other than the declarant as a "surrogate").

evidence, (1) rely on, repeat, or interpret admissible and nonhearsay machine-generated printouts of machine-generated data, see, e.g., Moon, 512 F.3d at 362; United States v. Washington, 498 F.3d 225, 230-31 (4th Cir. 2007), and/or (2) rely on, but not repeat, testimonial hearsay that is otherwise an appropriate basis for an expert opinion, so long as the expert opinion arrived at is the expert's own, see, e.g., United States v. Ayala, 601 F.3d 256, 275 (4th Cir. 2010) (quoting United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009)); Mejia, 545 F.3d at 198; United States v. Law, 528 F.3d 888, 912 (D.C. Cir. 2008).  However, the Confrontation Clause may not be circumvented by an expert's repetition of otherwise inadmissible testimonial hearsay of another.  Mejia, 545 F.3d at 198.

## II.

As a threshold matter, we consider whether the admission of the testimonial hearsay of Jaramillo and Lee was "cured" because Dr. Papa testified and was subject to cross-examination.  We hold that it was not.

While reasonable minds may disagree about what constitutes testimonial hearsay, there can be no disagreement about who is the "witness" the accused has the right to confront.  That "witness" is the declarant.  See Crawford, 541 U.S. at 51 ("The text of the Confrontation

9

Clause . . . applies to 'witnesses' against the accused --
in other words, those who 'bear testimony.'" (quoting 2 N.
Webster, An American Dictionary of the English Language
(1828))); id. at 59 ("Testimonial statements of witnesses
absent from trial have been admitted only where the
declarant is unavailable, and only where the defendant has
had a prior opportunity to cross-examine."); Melendez-Diaz,
129 S. Ct. at 2537 n.6 ("The analysts who swore the
affidavits provided testimony against Melendez-Diaz, and
they are therefore subject to confrontation.").
Accordingly, the right of confrontation is not satisfied by
confrontation of a surrogate for the declarant. See, e.g.,
United States v. Martinez-Rios, 595 F.3d 581, 586 (5th
2010); Locklear, 681 S.E.2d at 305; Commonwealth v. Avila,
912 N.E.2d 1014, 1029 (Mass. 2009).

Furthermore, "reliability" is no substitute for this
right of confrontation. As the Supreme Court explained,

> Where testimonial statements are involved .
> . . . [The Sixth Amendment] commands, not that
> evidence be reliable, but that reliability be
> assessed in a particular manner: by testing in
> the crucible of cross-examination. The Clause
> thus reflects a judgment, not only about the
> desirability of reliable evidence . . . but about
> how reliability can best be determined.

Crawford, 541 U.S. at 61; see also Melendez-Diaz, 129 S.
Ct. at 2536 ("Respondent and the dissent may be right that

10

there are other ways -- and in some cases better ways -- to challenge or verify the results of a forensic test.  But the Constitution guarantees one way:  confrontation.  We do not have license to suspend the Confrontation Clause when a preferable trial strategy is available.").  While "reliability" is the end, the right of confrontation is the means, and it is the means (rather than the end) that the Sixth Amendment insists upon.

The Government nonetheless argues that admission of the testimonial hearsay of Jaramillo and Lee did not violate the Confrontation Clause because Dr. Papa was "the more logical and ideal witness from the lab," and "a properly and fully qualified expert witness . . . ideally suited to explain, interpret, and admit Appellant's drug tests."  But Crawford overruled the "particularized guarantees of trustworthiness" test established in Ohio v. Roberts, 448 U.S. 56, 66 (1980), and abandoned the focus on substantive reliability in favor of the inexorable demand for cross-examination of the declarant of testimonial hearsay.  Thus, while no one questions Dr. Papa's status as a qualified expert, this does not permit him to convey the testimonial hearsay of others.  Substitute means of ensuring reliability do not satisfy the Confrontation Clause, no matter how efficacious they might be.

Some of the cases the Government cites to the contrary are distinguishable from this case in that they either (1) consider out-of-court statements that, unlike the hearsay we held testimonial in Blazier I, were deemed not testimonial, see, e.g., People v. Lovejoy, 919 N.E.2d 843, 869-70 (Ill. 2009); State v. Appleby, 221 P.3d 525, 551 (Kan. 2009); or (2) deal not with the admission of testimonial hearsay, as happened in this case, but with expert reliance on that unadmitted hearsay in forming opinions, Turner, 591 F.3d at 934 (noting that the hearsay relied upon "was not admitted into evidence, let alone presented to the jury in the form of a sworn affidavit, 'functionally identical to live, in-court testimony . . . .'" (quoting Melendez-Diaz, 129 S. Ct. at 2532)).

And contrary to the Government's view on the precedential value of a denial of certiorari, see Teague v. Lane, 489 U.S. 288, 296 (1989); Eugene Gressman et al., Supreme Court Practice 334 (9th ed. 2007), we are not bound by the Supreme Court of Indiana's decision in Pendergrass, 913 N.E.2d at 707-08, cert. denied, 130 S. Ct. 3409 (2010). The Supreme Court of Indiana found that, under Melendez-Diaz, the statements of two non-testifying declarants were testimonial, id. at 707, but went on to hold that the right of confrontation was satisfied because the defendant "had

12

the opportunity to confront at trial two witnesses who were directly involved in the substantive analysis, unlike Melendez-Diaz, who confronted none at all," id. at 708. Of course, in this case Dr. Papa was not personally or directly involved in the substantive analyses at all. Moreover, we respectfully disagree with the principle the Government draws from Pendergrass -- that "the chief mechanism for ensuring reliability of evidence is . . . cross-examination" of someone. See id. That principle is incompatible with both Crawford and Melendez-Diaz; the right of confrontation is the right to confront and cross-examine the "witness" who made the "testimonial" statement.

In short, we hold that cross-examination of Dr. Papa was not sufficient to satisfy the right to confront Jaramillo and Lee, and the introduction of their testimonial statements as prosecution exhibits violated the Confrontation Clause.

### III.

The answer to the question whether Dr. Papa's testimony satisfied the Confrontation Clause with respect to the admission of the testimonial hearsay of Jamarillo and Lee in the cover memoranda does not answer the altogether different question as to the permissible bases and content of Dr. Papa's expert opinion testimony.

13

A qualified expert witness may give testimony in the form of opinion if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." M.R.E. 702. With respect to the first requirement, "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." M.R.E. 703. However, such inadmissible facts or data "shall not be disclosed to the members by the proponent of the opinion or inferences unless the military judge determines that their probative value in assisting the members to evaluate the expert's opinion substantially outweighs their prejudicial effect." Id.

Dr. Papa was qualified as an expert witness without defense objection based on his education and background, as well as his personal knowledge of laboratory procedures at the Brooks Lab. The question here is whether and to what extent Dr. Papa's testimony violated the Confrontation Clause and/or M.R.E. 703 by relaying testimonial hearsay.

We first note certain well-established principles, with which we agree.

First, it is well-settled that under both the Confrontation Clause and the rules of evidence, machine-generated data and printouts are not statements and thus not hearsay -- machines are not declarants -- and such data is therefore not "testimonial."[4]  United States v. Lamons, 532 F.3d 1251, 1263 (11th Cir. 2008); Moon, 512 F.3d at 362; Washington, 498 F.3d at 230-31; United States v. Hamilton, 413 F.3d 1138, 1142-43 (10th Cir. 2005); United States v. Khorozian, 333 F.3d 498, 506 (3d Cir. 2003); see also 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 380 (2d ed. 1994) ("[N]othing 'said' by a machine . . . is hearsay").  Machine-generated data and printouts such as those in this case are distinguishable from human statements, as they "involve so little intervention by humans in their generation as to leave no doubt they are wholly machine-generated for all practical purposes."  Lamons, 532 F.3d at 1263 n.23.  Because machine-generated printouts of machine-generated data are not hearsay, expert witnesses may rely on them, subject

---

[4] M.R.E. 801(a) defines a "statement" as either an "oral or written assertion" or "nonverbal conduct of a person, if it is intended by the person as an assertion."  (emphasis added).  Furthermore, M.R.E. 801(b) defines "declarant" as "a person who makes a statement."  (emphasis added).

only to the rules of evidence generally, and M.R.E. 702 and M.R.E. 703 in particular.

Second, an expert witness may review and rely upon the work of others, including laboratory testing conducted by others, so long as they reach their own opinions in conformance with evidentiary rules regarding expert opinions. M.R.E. 702; M.R.E. 703; see also Moon, 512 F.3d at 362; Washington, 498 F.3d at 228-32. An expert witness need not necessarily have personally performed a forensic test in order to review and interpret the results and data of that test. See, e.g., Rector v. State, 681 S.E.2d 157, 160 (Ga. 2009) (holding that a toxicologist's testimony was not barred by the Confrontation Clause because the toxicologist "had reviewed the work of the doctor who had originally prepared the report and reached the same conclusion that the victim's blood sample tested negative for cocaine"); Smith v. State, 28 So. 3d 838, 855 (Fla. 2009) (holding that a laboratory supervisor who did not perform DNA tests could testify "because she . . . formulated her own conclusions from the raw data produced by the biologists under her supervision").[5]

---

[5] Melendez-Diaz, 129 S. Ct. at 2536-38, which explained at length the myriad ways a laboratory analyst's report could be attacked on cross-examination and why the analyst whose testimonial hearsay was admitted must be subject to cross-

That an expert did not personally perform the tests upon which his opinion is based is explorable on cross-examination, but that goes to the weight, rather than to the admissibility, of that expert's opinion.  See United States v. Raya, 45 M.J. 251, 253 (C.A.A.F. 1996) (holding that a social worker's lack of personal interaction with or observation of a victim went to the weight, and not the admissibility of her testimony).  Moreover, lack of knowledge or unwarranted reliance on the work of others may make an expert opinion inadmissible:  the military judge, in his capacity as a "gatekeeper," see United States v. Sanchez, 65 M.J. 145, 149 (C.A.A.F. 2007) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993)), must determine whether the opinion is "based upon sufficient facts or data" and is the product of "reliable principles and methods" reliably applied to the case.  See M.R.E. 702.[6]

---

examination, is not to the contrary.  That case, which involved the admission of testimonial hearsay, did not hold that unadmitted forensic reports trigger the requirements of the Confrontation Clause.

[6] The fact that the Government may, consistent with the rules of evidence and the Confrontation Clause, introduce machine-generated data and expert testimony relying on the work of others does not preclude an accused from seeking to call as witnesses those who operated the machines or performed the work being relied upon to test, among other

Third, and relatedly, neither the rules of evidence nor the Confrontation Clause permit an expert witness to act as a conduit for repeating testimonial hearsay. Mejia, 545 F.3d at 198. An expert witness may review and rely upon inadmissible hearsay in forming independent conclusions, but he may not circumvent either the rules of evidence, see M.R.E. 703 (prohibiting the proponent from disclosing inadmissible facts and data relied upon by an expert witness unless the military judge determines "that their probative value in assisting the members to evaluate the expert's opinion substantially outweighs their prejudicial effect"), or the Sixth Amendment by repeating the substance of the hearsay. See Ayala, 601 F.3d at 275 ("[T]he question when applying Crawford to expert testimony is 'whether the expert is, in essence, giving an independent judgment or merely acting as a transmitter for testimonial hearsay.'" (quoting Johnson, 587 F.3d at 635));

_____

things, the accuracy, validity, and reliability of those machines and tests. As the Compulsory Process Clause of the Sixth Amendment, Article 46, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 846 (2006), and Rule for Courts-Martial (R.C.M.) 703(a) make clear, a defendant has the right to the compulsory process of witnesses who can provide relevant and necessary evidence in their defense. In other words, a live witness not required by the Confrontation Clause because the Government admitted no testimonial hearsay may nonetheless be called by the defense, and attendance compelled upon a showing of relevancy and necessity. Id.

Law, 528 F.3d at 912 (holding that the Confrontation Clause was not violated where the expert witness "did not relate statements by out-of-court declarants to the jury," but based his conclusion on his experience as a narcotics investigator).

Applying these principles to the instant case, many of the documents contained in the drug testing reports are machine-generated printouts of raw data and calibration charts,[7] and Dr. Papa's testimony consisted in large part of explaining and analyzing these documents. This portion of Dr. Papa's testimony was permissible because the documents relied upon were not hearsay of any kind, let alone testimonial hearsay.

Dr. Papa presented his ultimate conclusions as his own. When asked to give an opinion, Dr. Papa testified that based on his "training, education, and experience" it was his opinion that the tests of Appellant's samples were conducted reliably and that Appellant's urine showed traces of methamphetamine in the first test and marijuana in the second test.

---

[7] By our count, machine printouts comprise 111 pages out of the 128 pages (approximately 87 percent) in the June drug testing report, and 19 pages out of the 32 pages (approximately 59 percent) in the July drug testing report.

Nonetheless, Dr. Papa's testimony repeated at least some testimonial hearsay of declarants who did not testify: the cover memoranda were not only admitted into evidence, but the substance of the testimonial hearsay contained therein was repeated almost verbatim by Dr. Papa himself when he testified that one of the summaries "tells you . . . that we tested this particular specimen with our required menu of screen, rescreen, and GCMS confirmation" and "shows you what the results of the testing were."

In short, although Dr. Papa may well have been able to proffer a proper expert opinion based on machine-generated data and calibration charts, his knowledge, education, and experience and his review of the drug testing reports alone, both the drug testing reports and Dr. Papa's testimony contained a mix of inadmissible and admissible evidence. Specifically, the cover memoranda were inadmissible under the Confrontation Clause, and Dr. Papa's testimony conveying the statements contained in those cover memoranda -- including those concerning what tests were conducted, what substances were detected, and the nanogram levels of each substance detected -- were inadmissible under both the Confrontation Clause and M.R.E. 703, while the machine-generated printouts and data were not hearsay

United States v. Blazier, No. 09-0441/AF

at all and could properly be admitted into evidence and serve as the basis for Dr. Papa's expert conclusions.

IV.

The CCA viewed the drug testing reports in toto, and decided this case on the ground that the "drug testing results" were business records and not testimonial.[8] United States v. Blazier, 68 M.J. 544, 545-46 (A.F. Ct. Crim. App. 2008). Finding no error, the CCA did not have cause to examine the effect of error on the case.

As noted supra, the testimonial cover memoranda were admitted in violation of the Confrontation Clause. See Blazier I, 68 M.J. at 443. In light of this admission and Dr. Papa's repetition of the cover memoranda in his testimony, it is appropriate to consider harmlessness in light of a constitutional error.

> "For most constitutional errors at trial, we apply the harmless error test set forth in Chapman v. California, 386 U.S. 18 (1967), to determine whether the error is harmless beyond a reasonable doubt." United States v. Upham, 66 M.J. 83, 86 (C.A.A.F. 2008). Evidence admitted in violation of . . . the Confrontation Clause of the Sixth Amendment is subject to that standard.

---

[8] As noted in Melendez-Diaz, statements prepared in anticipation of litigation (as at least the cover memoranda clearly were), are not business records and, even if a document might otherwise be a business record, if it is testimonial hearsay, its admission violates the Confrontation Clause. 129 S. Ct. at 2538-40.

21

United States v. Blazier, No. 09-0441/AF

United States v. Gardinier, 67 M.J. 304, 306 (C.A.A.F. 2009).  Dr. Papa could have arrived at an expert opinion based on training, education, experience, and admissible evidence alone, and considered, but not repeated, inadmissible evidence in arriving at an independent expert opinion.  Such expert opinion and admissible evidence together could have been legally sufficient to establish the presence of drug metabolite in the urine tested.  See United States v. Barrow, 45 M.J. 478, 479 (C.A.A.F. 1997).  But in assessing harmlessness in the constitutional context, the question is not whether the evidence is legally sufficient to uphold a conviction without the erroneously admitted evidence.  See Fahy v. Connecticut, 375 U.S. 85, 86 (1963).  Rather, "'[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Chapman, 386 U.S. at 23 (quoting Fahy, 375 U.S. at 86-87).  This determination is made on the basis of the entire record, and its resolution will vary depending on the facts and particulars of the individual case.

In this case the parties have confined their harmless error arguments to the specified harmless error issue -- the effect of Dr. Papa's testimony.  The parties have not addressed whether or not the constitutional error was

22

harmless in light of the entire record.  Having answered the specified issues, we remand this case for the parties to brief, and the CCA to resolve in the first instance -- on the basis of the entire record -- whether the admission of the drug testing report cover memoranda and Dr. Papa's repetition of the contents of such memoranda were harmless beyond a reasonable doubt.[9]

Accordingly, the decision below is reversed.  The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals.

---

[9] Consistent with the principles articulated in Melendez-Diaz, Crawford, United States v. Magyari, 63 M.J. 123 (C.A.A.F. 2006), United States v. Harcrow, 66 M.J. 154 (C.A.A.F. 2008), Blazier I, and this case, the CCA may determine whether any other documents within the drug testing reports for the June and July tests (such as certifications that all procedures were properly followed on the specimen custody documents) were testimonial or utilized in violation of M.R.E. 703 if necessary to its decision.