# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman ABNER C. LEPS
### United States Air Force

## ACM S32129

## 19 February 2014

Sentence adjudged 16 January 2013 by SPCM convened at Little Rock Air Force Base, Arkansas. Military Judge: J. Wesley Moore.

Approved Sentence: Bad-conduct discharge, confinement for 83 days, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Isaac C. Kennen.

Appellate Counsel for the United States: Colonel Don M. Christensen; Colonel William R. Youngblood; and Gerald R. Bruce, Esquire.

Before

HELGET, WEBER, and PELOQUIN
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

PELOQUIN, Judge:

A panel of officer members sitting as a special court-martial convicted the appellant, contrary to his pleas, of one specification of wrongful use of cocaine and one specification of wrongful use of marijuana on divers occasions, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.[1] The adjudged sentence consisted of a bad-

---

[1] The appellant was also charged with wrongful use of hydrocodone; wrongful possession of Spice with the intent to use; and receiving a firearm while an unlawful user of marijuana, cocaine and hydrocodone; in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934. The court-martial panel found the appellant not guilty of wrongful use of hydrocodone, and the military judge entered a finding of not guilty, pursuant to Rule for Courts-Martial 917, to the specifications alleging wrongful possession of Spice and illegal receipt of a firearm.

conduct discharge, confinement for 3 months, and reduction to E-1. The convening authority approved a sentence of a bad-conduct discharge, confinement for 83 days, and reduction to E-1. On appeal, the appellant asserts three errors: (1) The military judge abused his discretion by denying a defense challenge for cause of a court member; (2) The military judge abused his discretion by admitting, over defense objection, testimony regarding the testing of the appellant's urine from an expert who did not perform or observe that process; and (3) The military judge abused his discretion by admitting evidence obtained by and derived from a warrantless search. Finding no error that materially prejudices the appellant, we affirm.

*Background*

On 13 August 2012, the appellant provided a urine sample pursuant to a random urinalysis inspection, and his sample subsequently tested positive for cocaine and hydrocodone. On 5 September 2012, having been notified of the positive test result, the Air Force Office of Special Investigations (AFOSI) interviewed the appellant. The appellant admitted to AFOSI agents that, on either 6 August 2012 or 13 August 2012, he had taken hydrocodone to treat shoulder pain. The hydrocodone had previously been prescribed to him to treat pain following the extraction of his wisdom teeth. He further admitted to snorting cocaine at a house party on either 3 August 2012 or 10 August 2012.

Command policy required any airman whose urine tested positive for illegal substances to submit to a follow-on urinalysis test. Pursuant to this policy, the appellant provided another urine sample on 5 September 2012. That sample tested positive for marijuana. He provided a third sample on 27 September 2012. That sample also tested positive for marijuana. On 19 October 2012, the appellant provided a fourth urine sample, and it, too, tested positive for marijuana.

On 27 September 2012, AFOSI agents asked the appellant for consent to search his on-base home. The appellant did not consent to a search. AFOSI agents went to his home and examined the outside of the home and the surrounding open space and public access areas. A residential trash bin labeled with the commercial trash disposal company's logo was located adjacent to the appellant's carport. AFOSI agents, after conferring with legal counsel, conducted a warrantless search of the trash bin and found paraphernalia associated with illegal drug use. AFOSI agents then secured a search warrant for the home and searched the home, discovering further evidence of drug use.

*Defense Challenge for Cause*

The appellant's trial defense counsel challenged Lieutenant Colonel (Lt Col) MB, a prospective court member, for cause under Rule for Courts-Martial (R.C.M.) 912. Trial defense counsel asserted that Lt Col MB's answers during voir dire indicated Lt Col MB

was biased against the appellant exercising his right to plead not guilty and right to not defend a charge against him. The military judge did not grant the challenge.

During individual voir dire, trial defense counsel, trial counsel, and the military judge each posed questions to Lt Col MB.

[Trial Defense Counsel] Q: . . . You do agree that every citizen has that right to plead not guilty and put the burden on the government to prove each aspect of their case?

A: Yes.

Q: But then I asked if an airman was, in fact, guilty of something, whether or not you felt that person should plead guilty. As I noted in my notes, you seemed to think that an airman should plead guilty in that case. I was wondering if you would be willing to explain a little bit in your thinking behind that?

A: I just think if you have—rather than drag things along, if its certain that you did it, I think you're just kind of forcing the government to prove something that, I mean, you already know to be true. I guess it's just a moral issue.

Q: One final quick question. Toward the end, I asked the questions about whether or not you felt that defense should have to, whether or not you want the defense, or whether or not the defense should put on evidence of any aspect of the case. Can you explain a little bit about how you feel about that in the way that you responded?

A: In what context, I guess?

Q: I guess what I'm asking you is do you feel like the defense should or you would want the defense to put on a case?

A: Well certainly, you've got to put on your own case for your client. It's up to you what you do and don't do, so I understand that.

. . . .

[Assistant Trial Counsel] Q: . . . During defense's questioning during the group session, I believe you said that you understood that the defense has an affirmative right to not plead guilty, that he has a constitutional right to not plead guilty.

A: To plead not guilty?

Q: To plead not guilty. He has the constitutional right to plead not guilty?

A: Yes.

Q: So based on that, do you believe that you would hold it against the accused if he plead not guilty and then was later found guilty?

A: No.

Q: Do you believe that you can put that aside and fairly and impartially weigh the evidence in this case and judge it on that alone?

A: Yes.

Q: And also you understand that the defense is not required to put on evidence, correct?

A: Yes.

Q: Do you believe that you will be able to not hold it against the accused if the defense does not put on any evidence?

A: Yes

. . . .

[Military Judge] Q: So it sounds like with regard to someone who knows they are guilty, pleading not guilty. You said that, basically, you're just forcing the government to prove something that you already know. In other words, are you just talking about a situation where the proof is such that it's inevitable that the person would eventually be convicted, something like that?

A: Yes, sir.

Q: So what about a situation where you may know they are guilty, but you don't believe the government can prove it. Do you think a person should still plead guilty under those circumstances?

A: I guess the law allows them not to, so no.

Q: I want to circle back, I guess, to your statement that you're just forcing the government to prove something you already know. That may carry with it certain expenditures in time, effort, witnesses and things like that, the government having to prove their case. Would you hold any of those expenses that come along with the government having to prove its case against the accused if he were to be convicted of any of the offenses?

A: No.

The military judge entertained argument from both sides regarding trial defense counsel's challenge of Lt Col MB for actual and implied bias. The military judge denied the challenge and explained his ruling, which he based on the member's answers, the context of the questions posed, and his observations of the member's demeanor and sincerity.

MJ: The challenge against [Lt Col MB] is denied. I do not see that he did actually have any evidence of actual bias. Even applying the liberal grant mandate and looking at it from an implied bias standpoint, I don't find that his answers to a few confusing questions asked without sufficient context was enough to disqualify him in this case. With regard to his answers, any number of people could think that someone against whom the evidence is insurmountable should plead guilty for any number of reasons. There are any number of reasons that might be in a person's best interest, as trial counsel pointed out, to avail oneself of the instruction that the guilty plea is a first step towards rehabilitation, or to otherwise ingratiate oneself to a court-martial panel. So there are any number of reasons why a person might answer that a person should plead guilty. The important thing is that the members not hold it against the accused that he has chosen to plead not guilty. I take [Lt Col MB] at his word when he said he would not do that. He seemed to say that, without hesitation, and in a manner that did not cause me in any manner to disbelieve his assertion or to think that he was lying to himself even. I think he will, indeed, not hold it against the accused, even from an appearance standpoint. Again, I don't find his answers were such that his service on the court would impugn [the] court-martial process, even considering it from the liberal grant mandate. So the challenge against [Lt Col MB] is denied.

R.C.M. 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member should not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality. This rule encompasses challenges based upon both actual and implied bias. *United States v.*

*Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

The test for actual bias is "whether any bias is such that it will not yield to the evidence presented and the judge's instructions." *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (internal quotation marks omitted). Because the existence of actual bias is a question of fact, we provide the military judge with significant latitude in determining whether it is present in a prospective member. *Id.* (citing *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999)). Actual bias is reviewed "subjectively, through the eyes of the military judge or the court members." *Warden*, 51 M.J. at 81 (quoting *Napoleon*, 46 M.J. at 283) (internal quotation marks omitted). A challenge based on actual bias is essentially one of credibility, and because the military judge has an opportunity to observe the demeanor of court members and assess their credibility on voir dire, a military judge's ruling on actual bias is afforded deference. *United States v. Briggs*, 64 M.J. 285, 286 (C.A.A.F. 2007) (citing *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996)).

The test for assessing an R.C.M. 912(f)(1)(N) challenge for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). The hypothetical public is assumed to be familiar with the military justice system. *Id.* (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002). We review issues of implied bias under a standard less deferential than abuse of discretion, but more deferential than de novo. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (citing *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005)).

In the case before us, Lt Col MB consistently acknowledged the rights of the appellant. During group voir dire, he acknowledged the appellant is presumed innocent; the Government must prove his guilt beyond a reasonable doubt; the appellant has the legal and moral right to plead not guilty; the appellant should not be punished for exercising his rights; and that, in the event there was a finding of guilt, he could consider all punishment options. The issue at hand, and Lt Col MB's individual voir dire, was triggered by a trial defense counsel group voir dire question which followed on the heels of the members' clearly acknowledging the appellant's rights.

[Trial Defense Counsel] Q: Having said [that an airman always has a legal and moral right to plead not guilty], do any of you believe an airman should plead guilty if he did something wrong? That's a positive response from Major [JB] . . . Lieutenant Colonel [MB] . . . Lieutenant [CH] . . . [and] Lieutenant [CY].

The military judge, in his ruling, noted that this line of voir dire was confusing and that the members were asked to answer the question without sufficient context. Whatever concerns of bias may have been raised by Lt Col MB's response to this one question were fully addressed in individual voir dire by trial counsel, trial defense counsel, and the military judge. During individual voir dire, Lt Col MB restated his acknowledgement of the appellant's rights, to include the right to plead not guilty. The fact that Lt Col MB may hold a moral belief that individuals should own up to their actions does not negate his ability to judge a case fairly and justly according to the law. As our superior court has noted: "As a general matter, moral or religious views are not per se disqualifying where a member otherwise demonstrates a capacity to hear a case based on the four corners of the law and as instructed by the military judge." *Elfayoumi*, 66 M.J. at 357.

The military judge, having observed Lt Col MB throughout voir dire and having questioned him himself, determined there was no basis to find Lt Col MB exhibited actual or implied bias. We find nothing in the record, from either an objective or subjective review, that would cause us to find the military judge abused his discretion in that ruling.

*Urinalysis Expert Testimony*

During pretrial motions, trial defense counsel objected to trial counsel's introduction of four Air Force Drug Testing Laboratory (AFDTL) Drug Testing Reports (DTRs), which contained data and analysis of the appellant's urine samples. Trial defense counsel also objected to the testimony of the government's expert witness regarding the DTRs. Trial defense counsel contended the DTRs were testimonial in nature and, absent the testimony of the several AFDTL personnel who tested the urine samples, the DTRs admission would violate the Sixth Amendment's Confrontation Clause.[2] The trial counsel re-offered the DTRs after redacting all signatures and statements that inferred conclusions drawn from the testing data. After reviewing the redacted DTRs, trial defense counsel did not object to their admission.

It is well settled under both the Confrontation Clause and the Military Rules of Evidence that machine-generated data and printouts are not statements, and thus are not hearsay; and that machines are not declarants, and therefore such machine-generated data

---

[2] U.S. CONST. amend. VI.

is not testimonial. *United States v. Blazier*, 69 M.J. 218, 224 (C.A.A.F. 2010). Machine-generated data and printouts such as those in this case are "distinguishable from human statements, as they involve so little intervention by humans in their generation as to leave no doubt they are wholly machine-generated for all practical purposes." *Id.* (quoting *United States v. Lamons*, 532 F.3d 1251, 1263 n.23 (11th Cir. 2008)) (internal quotation marks omitted). Because machine-generated printouts of machine-generated data are not hearsay, expert witnesses may rely on them, subject only to the rules of evidence generally, and Mil. R. Evid. 702 and 703 in particular. *Blazier*, 69 M.J. at 224. The fact that "an expert did not personally perform the tests upon which his opinion is based is explorable on cross-examination, but that goes to the weight, rather than to the admissibility, of that expert's opinion." *Id.* at 225.

A qualified expert witness may testify as to her opinion if: (1) her testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Mil. R. Evid. 702. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. The facts or data, if they are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, need not be admissible in evidence in order for the opinion or inference to be admitted. Mil. R. Evid. 703.

In this case, the redacted DTRs were admissible and properly admitted as prosecution exhibits without objection into evidence. The DTRs, as admitted, contained only machine-generated data. Unlike *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), no cover memorandum or other document summarizing the tests, or stating conclusions regarding the testing data, were offered or admitted into evidence. At trial, the Government's qualified expert witness reviewed the DTR data, explained the DTR data to the members, explained how the testing process proceeded, and how the DTR data was created. Relying on that data, the expert rendered her opinion as to the presence of illegal substances in the appellant's urine sample.

The admission of the DTRs raised no Confrontation Clause issues; the expert opinion testimony based upon the DTRs data falls squarely within permissible testimony as framed by our superior court in *Blazier*.

*Unlawful Search and Seizure*

The appellant contends that the 5 September 2012 AFOSI search of his residential trash bin was an unlawful search and that any evidence seized as a result of this warrantless search, as well as any evidence seized in the course of the subsequent search of his home pursuant to a warrant, should have been suppressed by the military judge.

This issue hinges on whether or not the appellant had a reasonable expectation of privacy in his residential trash bin and its contents.

The appellant lived in an on-base residence. The residence was a single story, rambler-style house with a single attached carport on the right side of the home as viewed from the street. The front and right side of the carport were not enclosed. A driveway connected the concrete floor of the carport to the street. The home had a fenced backyard. Beyond the backyard and to the right of it was open ground, and beyond the open ground was the base lake. This open ground was for public use and provided access to the base lake. To the right of the carport and driveway was an area of open ground which extended from the street to the open ground beyond the appellant's backyard. This area was essentially open to the public and could be used to traverse to the open ground behind the appellant's home and onto the base lake.

The appellant was provided a residential trash bin which carried the logo of the trash disposal company. It was provided to the appellant by base housing for collection of trash by the disposal company. When the AFOSI agents arrived at the appellant's home, the trash bin was upright on the grass area immediately adjacent to the front right corner of the carport.

A military judge's ruling on a motion to suppress is reviewed for an abuse of discretion. *United States v. Clayton*, 68 M.J. 419, 423 (C.A.A.F. 2010). A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law. *United States v. Irizarry*, 72 M.J. 100, 103 (C.A.A.F. 2013).

The Fourth Amendment[3] provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A violation of the Fourth Amendment occurs only when the Government violates a subjective expectation of privacy that society recognizes as reasonable. *Kyllo v. United States*, 533 U.S. 27, 33 (2001). An individual has a reasonable expectation of privacy, and hence Fourth Amendment protections, in the curtilage of their house. *Oliver v. United States*, 466 U.S. 170, 180 (1984). The central component in determining what lies within the curtilage is whether the area harbors "the intimate activity associated with the

---

[3] U.S. CONST. amend IV.

sanctity of a man's home and the privacies of life." *Id.* (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)) (internal quotation marks omitted).

Though not an exclusive list, the Supreme Court provides four factors to be considered to assist in determining whether or not an area falls within the curtilage of a house: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included with an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn*, 480 U.S. 294, 301 (1987).

In his ruling denying the appellant's motion to suppress, the military judge referred to the *Dunn* factors and found that the trash bin was outside the curtilage of the home. The trash bin was not within any enclosure surrounding the home; the appellant made no efforts to manifest an expectation of privacy in the bin; and the area where the bin was placed was readily visible and accessible to the public, and could be readily traversed by anyone. We find nothing erroneous in the military judge's findings of fact nor in his assessment of the applicable law.

Having determined that the trash bin was outside the curtilage of the home, and hence the appellant had no reasonable expectation of privacy where it was located, we turn to the final point of whether the appellant had any reasonable expectation of privacy in the contents of the bin specifically.

The Supreme Court's ruling in *California v. Greenwood*, 486 U.S. 35 (1988), guides our analysis on this issue. In *Greenwood*, the respondents had placed their trash in opaque bags and set them on the curbside. The majority found, "[H]aving deposited their garbage in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded." *Greenwood*, 486 U.S. at 40-41 (citation and internal quotation marks omitted). Relying on *Greenwood*, the United States Court of Appeals for the Seventh Circuit reached a similar conclusion in *United States v. Shanks*, 97 F.3d 977 (1996). There, the defendant had placed bags of garbage into a trash bin located adjacent to a garage and next to a public thoroughfare, a fact pattern nearly identical to the instant case. The court concluded, "Once [the defendant] placed his contraband-containing bags in the garbage containers located adjacent to a public thoroughfare, he exposed them to the public-at-large, including the police." *Shanks*, 97 F.3d at 980.

Returning to the military judge's ruling denying the appellant's motion to suppress, we concur with his findings of fact and his application of the law. The warrantless search of the appellant's trash was lawful and did not violate the appellant's Fourth Amendment rights. The seizure of the contraband found in the trash was lawful as well. And finally, the use of the information gleaned from the search of the trash to find

probable cause to support a warranted search of the appellant's residence did not violate the appellant's constitutional rights.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court

ACM S32129