# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 WILLIAM E. MAYBERRY**
**United States Army, Appellant**

ARMY 20120396

Headquarters, III Corps and Fort Hood
Gregory A. Gross, Military Judge
Lieutenant Colonel Craig E. Merutka, Acting Staff Judge Advocate (pretrial)
Colonel Stuart W. Risch, Staff Judge Advocate (recommendation)
Colonel Richard W. Rousseau, Staff Judge Advocate (addendum)

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Major Amy E. Nieman, JA; Captain Robert H. Meek, III, JA (on brief).

For Appellee: Major A.G. Courie III, JA; Major Steven J. Collins, JA; Captain Benjamin W. Hogan, JA (on brief).

25 August 2015

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

An officer panel sitting as a special court-martial convicted appellant, in absentia and contrary to his pleas, of one specification of desertion terminated by apprehension and one specification of wrongful use of a controlled substance in violation of Articles 85 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§885 and 912a (2006) [hereinafter UCMJ]. The panel sentenced appellant to a bad-conduct discharge. The convening authority approved the adjudged sentence and credited appellant with six days confinement credit.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error, two of which warrant discussion but no relief. Appellant alleges his Sixth Amendment right to confrontation was violated when the

military judge allowed the testimony of a government expert who did not personally perform any of the tests on appellant's urine. Specifically, appellant alleges the military judge erred by allowing the expert to testify to: (1) appellant's laboratory accessions number (LAN) and (2) the absence of any discrepancy codes on the laboratory document packet. We find that the expert's testimony did not violate appellant's right to confrontation because it was not testimonial hearsay in either regard. We also find the issues raised by appellant personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) to be without merit.

## BACKGROUND

After a period of unauthorized absence, appellant returned to military control. In accordance with unit policy, appellant's company commander ordered him to submit to a urinalysis. Appellant's urine sample subsequently tested positive for D-methamphetamine at Tripler Army Medical Center Forensic Toxicology Drug Testing Laboratory [hereinafter Tripler] in Hawaii.

At trial, the government called three witnesses to prove appellant's wrongful use of D-methamphetamine: the noncommissioned officer responsible for administering the unit urinalysis, the unit observer who watched appellant urinate into the specimen cup, and a forensic toxicologist from Fort Sam Houston, Texas. None of these witnesses actually handled or tested appellant's urine sample at Tripler.

The forensic toxicologist, Lieutenant Colonel (LTC) TM, was the Deputy Director for the Department of Defense (DoD) Drug Demand Reduction Program. Previously, he served as the Army Program Manager for Drug Testing and the Deputy Commander of Tripler. Lieutenant Colonel TM was familiar with urinalysis lab testing and specifically Tripler's standard operating procedures. He possessed a bachelors and post-doctorate degree in chemistry and was recognized as an expert in the area of "forensic toxicology" at trial. At the time appellant's urine sample was tested at Tripler, LTC TM was assigned to the DoD Drug Demand Reduction Program in San Antonio, Texas responsible for inspecting and certifying the drug testing laboratories throughout the DoD, which included Tripler. In fact, LTC TM inspected Tripler a few days before the testing of appellant's urine sample at the laboratory.

At an Article 39(a) session, appellant objected to the admission of LTC TM's testimony on several grounds. First, defense counsel asserted the laboratory document packet upon which LTC TM relied contained testimonial hearsay. The military judge directed the government to redact this information. Eventually, when the packet was submitted into evidence as Prosecution Exhibit (Pros. Ex.) 11, it contained only computer generated information and non-testimonial evidence.

Second, defense counsel argued the act of assigning a LAN to appellant's social security number was a testimonial statement, requiring the person who assigned the LAN to be produced at trial. The military judge ruled that the computer generated LAN number was not a testimonial statement, despite the fact that a LAN sticker was placed on all sample bottles and testing documents by a person.

Third, defense counsel objected to LTC TM's testimony that the absence of discrepancy code annotations on Tripler's processing documents evinced appellant's sample was received and processed in the "normal drug lab fashion" – consistent with Tripler's standard operating procedures. The military judge permitted LTC TM to testify about "what [the absence of a discrepancy code] would mean, because that's not a statement."

At trial, LTC TM testified that he was familiar with the procedures for receipt and processing of samples at Tripler and he was able to explain to the panel the laboratory procedure for intake and processing of these samples. The laboratory document packet itself was offered as Pros. Ex. 11. A certification page from the records custodian was redacted and offered separately as Pros. Ex. 17. A "Specimen Custody Document," Pros. Ex. 8, contained on Department of Defense Form (DD Form) 2624, indicated that LAN T12A0957097 matched appellant's social security number. The military judge admitted Pros. Exs. 8, 11 and 17.[1]

After reviewing Pros. Ex. 11, which contained machine-generated data, LTC TM testified that, in his expert opinion, a urine sample with the LAN T12A0957097 tested above the DOD cutoff level, and therefore "positive" for D-methamphetamine.

On appeal, appellant asserts the military judge erred by admitting LTC's testimony regarding the LAN and certifying that appellant's sample was properly processed in accordance to lab procedures, thereby linking the positive test result to appellant.

## LAW AND DISCUSSION

*Confrontation Clause*

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion considering the evidence "in the light most favorable to the prevailing party." *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996). First, however, we must decide whether the evidence is constitutionally admissible as non-

---

[1] Although laying the foundation was inartful, the attestation certification page was entered into evidence as a business record through LTC TM.

testimonial hearsay. Whether evidence is testimonial hearsay is a question of law reviewed de novo. *United States v. Tearman*, 72 M.J. 54, 58 (C.A.A.F. 2013).

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. Therefore, "no testimonial hearsay may be admitted against a criminal defendant unless (1) the witness is unavailable, and (2) the witness was subject to prior cross-examination." *United States v. Blazier,* [hereinafter *Blazier II*] 69 M.J. 218, 222 (C.A.A.F. 2010) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

Under both the Confrontation Clause and the Military Rules of Evidence, "machine-generated data and printouts are not statements and thus not hearsay—machines are not deemed declarants—and such data is therefore not 'testimonial.'" *Blazier II*, 69 M.J. at 224 (citations omitted). Recently, in *Williams v. Illinois*, 132 S. Ct. 2221 (2012), the Supreme Court upheld the use of expert deoxyribonucleic acid (DNA) comparison testimony disclosing the contents of reports by non-testifying witnesses. No single rationale for the decision, however, commanded a majority of the Court. The plurality opinion and Justice Thomas's concurrence relied on differing legal theories both as to what constitutes hearsay and as to what types of statements are testimonial. *Id*. at 2244-52. In light of the majority's differing rationales, the proper application of the Confrontation Clause is unclear. As a result, we look to our military service superior court for further guidance.

The United States Court of Appeals for the Armed Forces (CAAF) recently provided guidance on distinguishing between testimonial and nontestimonial statements. *See Katso*, 74 M.J. __ (C.A.A.F. 30 Jun. 2015); *See also United States v. Bennett*, __ M.J. __ (C.A.A.F. 27 Jul. 2015) (sum. disp.). In analyzing the issue, the Court asked "whether it would 'be reasonably foreseeable to an objective person that the purpose of any individual statement . . . is evidentiary,' considering the formality of the statement as well as the knowledge of the declarant." *Katso*, 74 M.J. __, slip op. at 16 (quoting *Tearman,* 72 M.J. at 58). Chain of custody documents or internal review documents are not testimonial because they are "filled out for 'internal control, not to create evidence' and because they 'lack[ed] any indicia of formality or solemnity.'" *Id*. (quoting *Tearman,* 72 M.J. at 59-61). However, signed "formal, affidavit-like" documents certifying sample integrity and compliance with protocol are testimonial (i.e. signed memorandum reports of drug testing). *Id*. (citing *Sweeney*, 70 M.J. at 299, 304). *See Id.* citing *Blazier*, 68 M.J. at 440, 443 ("signed declarations served an evidentiary purpose because they summarized and clearly set forth an accusation, and were generated in response to a command request.")(internal quotation marks omitted).

If the expert did rely in some way on testimonial hearsay, then the next question is "whether [the expert] had sufficient personal knowledge to reach an

independent conclusion as to the object of his testimony and his expert opinion." *Katso*, 74 M.J. __, slip op. at 19. (citation omitted). The admissibility of the expert's opinion hinges on the degree of independent analysis the expert undertook in order to arrive at that opinion. *Blazier II*, 69 M.J. at 224-25. Experts may not act as a conduit for repeating testimonial hearsay by acting as a "transmitter" instead of communicating an "independent judgment." *Id*. at 225. An expert witness who repeated statements in an inadmissible cover memoranda violated the Confrontation Clause. *Id*. at 226. A witness should instead proffer an expert opinion upon such things as machine-generated data, knowledge, education, experience, and their review of the testing reports alone. *Id*. We also know an expert need not necessarily have personally performed a forensic test to review and interpret the results and data of that test. *Id*. at 224-25. "[Experts] may review and rely on the work of others," including laboratory testing, as long as their opinions are their own. *Id*. at 224.

In this case, we hold that the testimony of LTC TM did not violate appellant's right to confrontation. More specifically, we disagree with appellant that placing a computer generated LAN on the urinalysis bottles or testing documents is testimonial hearsay. The LAN is a computer generated number substituted for the social security number of the service member whose urine sample is being tested. The LAN is filled out for internal control, not to create evidence and lacking any indicia of formality or solemnity– similar to non-testimonial chain of custody documents or internal review worksheets. *See Tearman,* 72 M.J. at 59-61.

We further disagree that LTC TM's testimony regarding the lack of discrepancy codes was testimonial hearsay.[2] Lieutenant Colonel TM's testimony established the internal handling of documents indicated no procedural defects – we view this testimony as akin to a chain of custody document. Additionally, LTC TM did not repeat inadmissible hearsay or link the LAN number to appellant. Prosecution Exhibit 8 showed the connection between the LAN and appellant's social security number and thus the connection between Pros. Ex. 11 and appellant. We conclude, therefore, that LTC TM's use of deductive reasoning regarding the lack of evidence is not repeating testimonial hearsay.

---

[2] The government conceded that the military judge erred in allowing LTC TM to testify to the omission of discrepancy codes as it related to proving laboratory procedures were followed and correct. We do not accept the government's concession. We note, however, that the government's concession occurred before the decision in *Katso*, 74 M.J. __ (C.A.A.F. 30 Jun. 2015) and CAAF's summary affirmance of *Bennett*, __ M.J. __ (C.A.A.F. 27 Jul. 2015)(sum. disp.).

Even if LTC TM relied on some testimonial hearsay when formulating his opinion,[3] this did not violate appellant's right to confrontation. The majority of the data underlying his opinion was not testimonial but based on his thorough review of the case file. *See Katso*, 74 M.J. __ (C.A.A.F. 30 Jun. 2015); *See also Bennett*, __ M.J. __ (C.A.A.F. 27 Jul. 2015) (sum. disp.). Lieutenant Colonel TM based his opinion on his personal knowledge and experience. He was intimately familiar with the procedures and quality assurance practices used at Tripler based on both his current job as an inspector of DoD laboratories and previous jobs as an Army Testing Procedure Manager and Deputy Commander of Tripler. He described the tests and testing processes based on his know-how and he drew his own independent conclusions from the machine generated data in Pros. Ex. 11, making him neither a surrogate nor a conduit for someone else's testimony. *See United States v. Bullcoming*, 131 S. Ct. 2705, 2711-12 (2011); *See also Blazier II*, 69 M.J at 225. He was able to describe the system for discerning protocol lapses based on his familiarity with the laboratory handling processes. Lieutenant Colonel TM properly relied on Pros. Ex. 11 and his own knowledge and experience to give his expert opinion.

*Dilatory Post-trial Processing*

The convening authority took action 556 days after the sentence was adjudged. Although we find no due process violation in the post-trial processing of appellant's case, we still review the appropriateness of appellant's sentence in light of the unjustified dilatory post-trial processing. UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."); *See generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

While ordinarily such extreme post-trial delay would warrant relief, in this case it does not warrant the extraordinary measure of disapproving appellant's punitive discharge.

---

[3] The certification portion in Block H of Pros. Ex. 8 was not fully redacted. The certification portion indicated "the laboratory results . . . were correctly determined by proper laboratory procedures, and they are correctly annotated." The individual who signed this certification did not testify at trial. The printed name of the certifying officer and her signature were redacted from the record.

## CONCLUSION

After considering the entire record and the submissions of the parties, the finding of guilty and the sentence are AFFIRMED.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court