# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

## Airman First Class JASON THOMPSON
## United States Air Force

## ACM S31996 (recon)

## 06 August 2014

Sentence adjudged 16 August 2011 by SPCM convened at Randolph Air Force Base, Texas. Military Judge: Matthew D. Van Dalen.

Approved Sentence: Bad-conduct discharge, confinement for 30 days, and reduction to E-1.

Appellate Counsel for the Appellant: Major Matthew T. King; Major Thomas C. Franzinger; and Captain Luke D. Wilson.

Appellate Counsel for the United States: Colonel Don M. Christensen; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; Major Brian C. Mason; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

PER CURIAM:

A panel of officer members sitting as a special court-martial convicted the appellant, contrary to his pleas, of a single specification of wrongful use of cocaine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 30 days, and reduction to E-1.

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq.*," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning, (25 June 2013).

When the appellant's case was originally before us, the appellant raised four issues: (1) whether testimonial hearsay was erroneously admitted through a drug testing report (DTR) and the testimony of a Government expert witness; (2) whether it was error to admit the DTR as a record of regularly conducted activity under Mil. R. Evid. 803(6); (3) whether trial counsel's argument was improper because it blurred the line between punitive and administrative discharges; and (4) whether the appellant was deprived of due process because proper procedures were not followed for resolving an ambiguous sentence.

On 7 August 2013, we issued a decision affirming the approved findings and sentence in the appellant's case. *United States v. Thompson*, ACM S31996 (A.F. Ct. Crim. App. 7 August 2013) (unpub. op.). Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of that panel. The appellant moved this Court to vacate the decision on the basis of Mr. Soybel's participation and also petitioned our superior court for a grant of review. On 31 October 2013, our superior court converted the appellant's motion to vacate, pending before our Court, into a motion for reconsideration, and dismissed the appellant's petition for grant of review without prejudice. *United States v. Thompson*, 73 M.J. 91 (C.A.A.F. 2013) (mem.). On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint appellate military judges, and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant submitted a supplemental assignment of errors asserting he is entitled to relief due to excessive post-trial processing delays. With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this Court. Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Background*

The appellant provided a urine sample as part of his training squadron's random urinalysis inspection. It was sent to the Air Force Drug Testing Laboratory (AFDTL), which returned a DTR identifying the appellant's sample as testing positive for cocaine.

At trial, the defense filed a motion in limine seeking to suppress the DTR. The military judge denied the motion, and the DTR was offered and admitted at trial. It contained redacted copies of the cover sheet and all of the internal certifications by non-testifying AFDTL personnel. The remaining pages were chain of custody documents and machine-generated scientific data. The appellant avers that the military judge erred when he admitted the DTR as evidence because it violated his right under the Sixth Amendment[1] to confront the witnesses against him.

An expert witness in the field of forensic toxicology and the drug testing operations and procedures at the AFDTL, Dr. H-M, testified about the processing of the appellant's sample through the drug testing laboratory. She also interpreted the scientific results, which were presented as a series of numerical data and graphs in the DTR.

Dr. H-M was the branch chief of the forensic science section of the AFDTL. She did not personally test the appellant's sample herself, but based on her personal knowledge of the laboratory, and her interpretation of the scientific results in the DTR, she testified that the appellant's sample tested positive for benzoylecgonine (BZE), the metabolite of cocaine, in the amount of 118 nanograms per milliliter.

Dr. H-M discussed all 25 pages of the DTR and interpreted not only the scientific data, but also the chain of custody information. She also explained the process the AFDTL implements when testing a batch of urine samples. On cross-examination, she admitted that she did not personally test the appellant's sample and that the results were dependent on humans performing their task properly. She also acknowledged humans sometimes make mistakes.

The defense's theory at trial was that, notwithstanding the guidance in *United States v. Blazier*, 69 M.J. 218 (C.A.A.F. 2010), the DTR should have been excluded in its entirety under *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705 (2011). We disagree and affirm the conviction.

*Testimonial Hearsay*

Even though a military judge's decision to admit evidence is reviewed under an abuse of discretion standard, *United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009),

---

[1] U.S. CONST. amend. VI.

the question of whether the admitted evidence violates the Confrontation Clause of the Sixth Amendment[2] is reviewed de novo. *Blazier*, 68 M.J. 439, 442 (C.A.A.F. 2010); *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008); *United States v. Rankin*, 64 M.J. 348, 351 (C.A.A.F. 2007). If we find a violation of the Confrontation Clause, we cannot affirm the decision unless this Court is convinced beyond a reasonable doubt that the error was harmless. *See Rankin*, 64 M.J. at 353.

The Confrontation Clause guarantees an accused the right to confront witnesses who are giving testimony against him, unless the witnesses were unavailable to appear at trial and the accused had a prior opportunity to cross examine them. *See Crawford v. Washington*, 541 U.S. 36 (2004). The Supreme Court addressed this issue in *Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009). There, the trial court admitted into evidence affidavits from state forensic laboratory analysts reporting the results of their examination of a substance alleged to be cocaine. *Id.* at 308. The results were sworn to by the analysts before a notary public. *Id.*

In finding that the admission of this evidence violated the accused's rights under the Confrontation Clause, the Court identified several "core" classes of testimonial statements covered by the Confrontation Clause. *Id.* at 309–10. The forensic affidavits attesting to "the fact in question," that the substance tested was in fact cocaine, was "[t]he precise testimony the analysts would be expected to provide if called at trial." *Id.* at 310. The Court explained that the affidavits were "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Id.* at 310–11 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)). *See, e.g.*, *United States v. Cavitt*, 69 M.J. 413, 414 (C.A.A.F. 2011); *United States v. Dollar*, 69 M.J. 411 (C.A.A.F. 2011).[3]

Our superior court in *United States v. Tearman*, 72 M.J. 54 (C.A.A.F. 2013), found that chain of custody documents and internal review documents are non-testimonial. The *Blazier* Court held that machine-generated documents were also non-testimonial. 69 M.J. at 224. To the extent those types of documents were in the DTR at trial, there was no Confrontation Clause problem.

## 1. Testimony about Certification

However, it appears some testimonial hearsay was admitted through the testimony of the Government's expert witness, Dr. H-M. Although the Government redacted the certifications on most of the documentation admitted and redacted the signatures of the certifying officials, some of the certifying language remained.

---

[2] U.S. CONST. amend VI.

[3] For this reason, *Williams v. Illinois*, ___ U.S. ___, 132 S. Ct. 2221 (2012), is inapplicable. The information in that case was not admitted for the truth of the matter asserted though relied upon by the testifying expert witness.

Page four of the DTR was entitled "Presumptive List." It listed the appellant's sample as a "presumptive positive" and indicated additional testing would be required. At the bottom of this page were three separate statements. For each, the signatures and date signed were redacted. The first statement said all other samples were "certified as negative/untestable and can be destroyed." The second statement said, "Presumptive positive specimen bottles were removed from the confirm tray in secure storage for the purpose of bottle label review and returned to the confirm tray in secure storage." The third statement said, "Additional bottle(s) were removed from the batch tray and transferred for the following reason:". There were no reasons given, leading one to assume no additional bottles were removed from that batch tray.

When Dr. H-M was asked about the "presumptive positive list" she testified it was actually a certification form where a laboratory certifying official indicated that the appellant's specimen was positive after the screening test, that it would need to undergo further screening, and that all the negative samples in that batch could be destroyed.

Dr. H-M's discussion about another lab worker's certification of the presumptive positive results introduced testimonial hearsay into the trial. Even though the signature was redacted, the panel president specifically asked about the signature after Dr. H-M testified that it was certified by a certifying official indicating that it was presumptively positive. This created a situation where an in-court expert witness testified about another (unidentified) person's certification in a laboratory report prepared in part by the non-testifying individual. Thus, an out-of-court certifying official is essentially testifying through an in-court expert witness's interpretation of the DTR without the appellant having the opportunity to confront that witness.[4] Thus, we find the admission of the "Presumptive List," coupled with Dr. H-M's testimony, negated the intended effects of the redaction—to keep the certifying official's "testimony" out of the minds of the members.

## 2. Effect of Error

Having found that testimonial hearsay was erroneously admitted, we must evaluate its impact on the case. We assess the impact of such error de novo to see whether this constitutional error is harmless beyond a reasonable doubt. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *United States v. Sweeney*, 70 M.J. 296, 306 (C.A.A.F. 2011); *United States v. Kreutzer*, 61 M.J. 293, 299 (C.A.A.F. 2005). As our superior court in *Tearman* articulated:

> To determine whether a Confrontation Clause error is harmless
> beyond a reasonable doubt, this Court has adopted the balancing test

---

[4] We note the appellant did not specifically object to this testimony, but the entire report was the subject of the motion in limine.

established in *Van Arsdall*, considering such factors as: "[1] the importance of the unconfronted testimony in the prosecution's case, [2] whether that testimony was cumulative, [3] the existence of corroborating evidence, [4] the extent of confrontation permitted, and [5] the strength of the prosecution's case."

*Tearman*, 72 M.J. at 62 (quoting *Sweeney*, 70 M.J. at 306 (citing *Van Arsdall*, 475 U.S. at 684)). This list of factors is not exhaustive, and the "determination is made on the basis of the entire record." *Blazier*, 69 M.J. at 227. "To conclude that a Confrontation Clause error was harmless beyond a reasonable doubt, we must be convinced that the testimonial hearsay was unimportant in light of everything else the court members considered on the issue in question." *Tearman*, 72 M.J. at 62 (citing *United States v. Gardinier*, 67 M.J. 304, 306 (C.A.A.F. 2009)).

In assessing constitutional error, the question is not whether the admissible evidence is sufficient to uphold a conviction, but "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 23 (1967), *quoted in Blazier*, 69 M.J. at 227.

We find that the admission of the testimonial hearsay was harmless beyond a reasonable doubt.

First, the remainder of the scientific evidence in the case was machine-generated scientific data, such as raw data and calibration charts, absent any testimonial hearsay associated with it. Dr. H-M interpreted these results based on her own expertise and firsthand knowledge of the lab and the procedures used there. In her own expert opinion, she concluded the appellant's urine sample was positive for the cocaine. In *Blazier*, the court held the introduction of some testimonial hearsay did not amount to constitutional error; the amount of testimonial hearsay in this case is a fraction of the amount admitted there. *See Blazier*, 69 M.J. at 226.

Further, the discussion about the certifying official centered on the fact that the appellant's sample was found positive after the initial screening test. Other parts of Dr. H-M's testimony established this was the first of two screening tests performed on the appellant's sample. She testified that a confirmation test, which utilized a different type of scientific testing procedure, was also used after the first two screening tests proved positive. The confirmation test would not have been used unless both screening tests were positive and the sample would not have been reported as positive unless all three tests were positive. The defense questioned Dr. H-M extensively about the scientific tests used by the laboratory: whether they met the prevailing scientific standards; the possibility of unknowing ingestion; the reliability of initial collection procedures; the possibility of inadvertent contamination; and many other aspects of the Air Force's drug testing procedure including potential flaws or mistakes when humans

operate within the process. Dr. H-M accepted the possibility of errors raised by the defense's hypothetical questions but testified that, in her expert opinion, the results in the appellant's case were forensically and scientifically reliable.

In addition to the scientific evidence presented at trial, just after the appellant found out his sample had tested positive for cocaine, he wrote a letter to his commander admitting, "I have breached not only my contract, but also the trust and respect of those who serve above me by testing positive for drug usage in a urinalysis." He also apologized "wholeheartedly" and committed to "NEVER again do anything that goes against the principles of the Air Force." In finishing the letter, he admitted to having "made a mistake" and asked for "just one chance to prove [him]self."

Besides the appellant's letter, the Government also presented evidence that approximately two weeks after his sample was collected, the appellant was escorted to the Criminal Investigations Division (CID) on Fort Hood, Texas, apparently for questioning about his drug usage. His escort testified that on the return trip the appellant was quiet and somber, and he said out loud to himself something to the effect of, "Damn I f[**]ked up."

Having applied the *Van Arsdall* factors to the facts in this case, we are convinced that the erroneous admission of testimonial hearsay was harmless beyond a reasonable doubt. The court members heard a qualified expert explain the machine-generated printouts produced by the forensic laboratory and specifically related to the appellant's urine. They heard Dr. H-M provide an independent opinion that the tests showed the presence of cocaine. They heard her consider all of the hypothetical problems that could have occurred within the drug testing process raised by the defense. However, in her opinion, those problems did not impact the appellant's testing. The testimonial hearsay was redundant with the other tests performed on the appellant's sample by the AFDTL and was cumulative with the expert's own opinion. This, coupled with the appellant's letter to his commander and his spontaneous statement to his escort after he was questioned by the CID, virtually eliminated any prejudicial impact the testimonial hearsay may have had. Therefore, in the posture of this case, we do not find a reasonable possibility that the evidence complained of might have contributed to the conviction.

*Regularly Conducted Activity under Mil. R. Evid. 803(6)*

We review a military judge's ruling on the admissibility of evidence for an abuse of discretion. *United States v. Mott*, 72 M.J. 319, 329 (C.A.A.F. 2013). Discretion represents a range of choices, not a single correct choice. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

Our sister court tackled this issue in *United States v. Byrne*, 70 M.J. 611 (C.G. Ct. Crim. App. 2011). There, the Coast Guard Court of Criminal Appeals found

that those portions of the DTR which are not testimonial hearsay, but which qualify as forensic laboratory reports are specifically admissible under Mil. R. Evid. 803(6). They found this because the rule specifically recognizes "forensic laboratory reports" in the examples of admissible evidence. *Byrne*, 70 M.J. at 621. Indeed, forensic laboratories are recognized under Mil. R. Evid. 803(6) "as impartial examining centers." Drafter's Analysis, *Manual for Courts-Martial*, *United States*, A22-55 (2012 ed.). Dr. H-M testified that the lab was required to keep the documents in the report, the documents were kept in the regular course of business at the lab, the information they contained was of the type the laboratory was regularly required to keep in accordance with her job, and the documents were maintained in accordance with the laboratory's rules for file management. We find Dr. H-M was a "qualified witness" as that term is used in the rule to lay out the predicate facts for admissibility of the report under Mil. R. Evid. 803(6).

Accordingly, we agree with our sister court that when a document meets the criteria of Mil. R. Evid. 803(6), and it has been sanitized to remove any of its testimonial character, as it was in this case, it is well within the military judge's discretion to admit it as evidence.

*Sentencing Argument*

During the sentencing argument, trial defense counsel objected to two comments made by trial counsel. The first was when he argued that "[t]o not give a bad-conduct discharge as a punishment is to say that we . . . can accept conduct like this in the military. And we can't send that message. It says that this person's service as a whole can still be called honorable----." At this point, the defense's objection was sustained by the military judge who instructed the members that a bad-conduct discharge was "punishment" and it did not have "an equation to members who are not getting in trouble." In the presence of the members, the military judge told trial counsel: "[T]o the extent you're mischaracterizing a bad-conduct-discharge, I will sustain the objection."

Trial counsel later argued to the members that a bad-conduct discharge was necessary because the appellant "needs to leave the service." When trial defense counsel renewed the objection, the military judge overruled it and told the members, "to the extent the trial counsel's argument conflicts with my instructions, you are to rely on my instructions and to defer to them only as to the law." He later gave the standard instruction from the military judges' benchbook.[5] During deliberations on sentence, the members asked whether a bad-conduct discharge was their only option. The judge told them "that is the only type of discharge you are authorized to adjudge in this case."

---

[5] Department of the Army Pamphlet 27-9, *Military Judges' Benchbook* (1 January 2010).

On appeal appellant argues trial counsel committed error by blurring the lines between a punitive discharge and an administrative separation. As evidence of this, his brief cites to letters that three of the five members sent to the convening authority after the trial stating that a bad-conduct discharge was "not appropriate in this case."

"Improper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011); *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011). If we find an error, we must evaluate whether the error prejudiced the appellant. We do this by balancing the severity of the impropriety and the military judge's actions to cure the improper argument with the weight of the evidence supporting the sentence, "to determine whether the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the appellant was sentenced on the basis of the evidence alone." *Marsh*, 70 M.J. at 107 (citation and quotation marks omitted). We evaluate this by considering the record as a whole, including the relative weight of the parties' respective sentencing cases. *Id*.

Despite the appellant's assertion, we find no error in this case. First, the military judge sustained the first objection and directed the members to follow the sentencing instruction he would give later in the trial. "Court members are presumed to follow the military judge's instructions." *United States v. Jenkins*, 54 M.J. 12, 20 (C.A.A.F. 2000); *United States v. Taylor*, 53 M.J. 195, 198 (C.A.A.F. 2000).

Second, a review of the court member letters shows they are all variations of the same basic letter. Indeed, they all have several identical sentences and the same basic message. All say that he is a good person and deserves mercy. Tellingly, none of them say they were confused about the difference between a bad-conduct discharge and an administrative discharge. None of the letters impeached the sentence. Each letter contained the identical first sentence of paragraph two, which read, "While I do not in any way condone the behavior that led to his conviction, I believe his is an appropriate case for *clemency*." (emphasis added). It is clear the members were appealing to the convening authority for clemency, which is something completely different than sentence appropriateness or evidence of confusion on the part of the members. It is expressly provided for in the *Manual* after the members adjudged their sentence in court. *See* Rule for Courts-Martial 1105(b)(2)(D). A post-trial recommendation for clemency is not evidence of an improperly influenced sentence.

However, even if we assume error, we would find no material prejudice to a substantial right of the appellant.

In *United States v. Fletcher*, 62 M.J. 175 (C.A.A.F. 2005), our superior court supplied a three-part test to determine if any prejudice occurred because of an improper sentencing argument. That test examines "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting

the conviction." *Id*. at 184. In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether "'trial counsel's comments, taken as a whole, were so damaging that we cannot be confident' that [the appellant] was sentenced 'on the basis of the evidence alone.'" *United States v. Erickson*, 65 M.J. 221, 224 (C.A.A.F. 2007) (quoting *Fletcher*, 62 M.J. at 184).

Applying the above test, we find no prejudice occurred because of trial counsel's comments. As discussed supra, any improper statement was minor and objected to by trial defense counsel, and the military judge gave curative instructions. Additionally, we are confident the appellant was sentenced on the basis of the evidence alone. He had less than one year of active duty service and was in the highly structured environment of military training at the 382d Training Squadron, on Fort Sam Houston, Texas. He was aware of the Air Force's standards concerning illegal drug use, but chose to violate them anyway before completing his technical training. When the members were considering all of this, including the appellant's matters in mitigation, they specifically asked if any other type of discharge could be given. They were properly instructed that their sentence could only include a bad-conduct discharge or no discharge. They were not confused on the law but three of them nonetheless recommended clemency, which the convening authority did not exercise.

While our responsibility is to ensure that the sentence was correct in law and fact, it is not our function to exercise clemency. *See* Article 66, UCMJ, 10 U.S.C. § 866; *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F 1999); *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988). Given the totality of the circumstances as contained in the entire record, we find the appellant's sentence was correct in law and fact and the appellant was sentenced on the basis of the evidence alone.

*Sentence Ambiguity*

The appellant next avers the Government deprived him of due process when it failed to follow prescribed procedures for resolving an ambiguous sentence. He bases this argument on *United States v. Kosek*, 41 M.J. 60 (C.M.A. 1994). This claim has no merit.

In *Kosek*, our superior court found it could not rule on an appeal based on search and seizure issues because the record was ambiguous as to whether the military judge actually ruled on certain facts or questions of law. *Id.* at 64. The answers to those questions were essential predicate questions which had to be answered before the *Kosek* court could rule on the appeal. The court's solution was to return the case to the military judge to "make essential findings of fact and conclusions of law so that the record will reflect the necessary predicate facts and applicable legal principles underlying the military judge's ruling." *Id*. at 65.

The appellant also relies on *Unites States v. Kaylor*, 27 C.M.R. 213 (C.M.A. 1959). There, immediately after announcing the sentence, which included a bad-conduct discharge, the president of the court-martial announced, sua sponte, "[t]he court recommends clemency in the above-entitled case. The clemency recommended is that the portion of the sentence adjudging bad conduct discharge be remitted." *Id.* at 214. The court's president then gave various reasons for the recommendation. *Id.*

Our superior court found the sentence to be ambiguous because of the "contemporary announcement of clemency in the form of a remission of a portion of the sentence just adjudged." *Id.* at 215. The court also noted there was nothing "to indicate the court members knew they did not need to impose a bad-conduct discharge." *Id.* at 214. This is because at the time of that court-martial, in 1959, there was no requirement to give instructions on sentence, and the members had no such instructions. In that same case, the court distinguished it from *United States v. Doherty*, 17 C.M.R. 287 (C.M.A. 1954), where the court did not itself find an ambiguous sentence. *Doherty* had facts similar to *Kaylor*, except there the members recommend clemency in the form of remission of the bad-conduct discharge in clemency submissions prepared by defense counsel, not contemporaneously with announcement of the sentence, and they received sentencing instructions regarding punitive discharges.

Given the above, it is clear the appellant's argument is misplaced. The members were instructed on the law. They asked a question about their options regarding discharges and received clarification. They submitted their clemency recommendation through trial defense counsel, not spontaneously with the announcement of sentence. Based on these facts, there is no reason to label their sentence ambiguous. Accordingly, there is no need to remand the case to either the convening authority or order a new sentencing procedure as requested by the appellant.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *See id.* at 136; *United States v. Roach*, 69 M.J. 17 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*,

70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was originally docketed for appellate review on 21 November 2011. After considering the briefs from appellate counsel, this Court rendered its decision on 7 August 2013. The overall delay of more than 540 days between the time of docketing and review by this Court is facially unreasonable. As stated supra, our superior court recently decided that one of the judges who participated in that decision was not properly appointed. *See Janssen*, 73 M.J. at 222. Accordingly, we have considered the appellant's court-martial before a properly constituted panel and issue this decision. The time between our superior court's action and this decision did not exceed 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered for this period of time. *See Mackie*, 72 M.J. at 136.

We analyze the *Barker* factors for the delay leading up to our decision. The first factor weighs in favor of the appellant; the length of the delay between docketing and our decision is presumptively unreasonable and therefore satisfies the first *Barker* factor. *See Moreno*, 63 M.J. at 142. The second factor weighs in favor of the appellant. While the delay may have been related to the number of personnel assigned to the Court and other related administrative issues, we are mindful of our superior court's emphasis that the established benchmarks do not create a "free" period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *Arriaga*, 70 M.J. at 57. Third, although the Government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), the appellant did not assert his right to speedy post-trial processing until 19 May 2014 in his supplemental assignment of error. Even though we sua sponte addressed the presumptively unreasonable delay in our first opinion, the appellant did not raise this as an issue in his petition for grant of review. His submission to our superior court did not include a demand for speedy appellate review. Finally, on the fourth factor, the appellant fails to demonstrate any prejudice in this case. "An appellant must demonstrate a 'particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.'" *Arriaga*, 70 M.J. at 58 (quoting *Moreno*, 63 M.J. at 140). Here, the appellant has not done so.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing in any stage of the appellate review of this matter. The reason for the delay between 1 August 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression, namely, whether the Secretary of Defense has the authority under the Appointments Clause[6] to appoint civilian employees to the service courts of criminal appeals. We conclude sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and sentence are

AFFIRMED



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[6] U.S. CONST. art. II, § 2, cl. 2.